RONALD VANCE ET AL. *v.* KENNETH
TASSMER ET AL.
(AC 29980)

Lavine, Robinson and Berdon, Js.

Argued April 14—officially released July 21, 2009

*Charlotte Croman,* for the appellants (defendants).

*Vincent T. McManus, Jr.,* for the appellees (plaintiffs).

*Opinion*

PER CURIAM. The defendants, Kenneth Tassmer and Richard Perillo, appeal from the decision of the trial court ordering them to perform in accordance with a settlement agreement (agreement) with the plaintiffs, Ronald Vance and Carol Vance. The defendants contend that the agreement is not enforceable because (1) it is ambiguous, (2) it is contingent and (3) they were under duress at the time that they executed the agreement. We conclude that the court's order enforcing the agreement is not a final judgment and, therefore, dismiss the appeal.

The following facts and procedural history are pertinent to the resolution of the defendants' claims. The plaintiffs filed a one count complaint against the defendants with a return date of October 24, 2006, seeking a declaratory judgment that under the doctrine of adverse possession they were the owners of a triangularly shaped parcel of land located at the northwest corner of their lot at 131 Cook Hill Road in Wallingford, which borders the defendants' property. The plaintiffs purchased their lot in 1994. According to the complaint, in 1984, Tassmer received by quitclaim deed certain real property located next to the plaintiffs' lot, at 133 Cook Hill Road. In 1999, Tassmer conveyed an undivided half interest in this property to Perillo.

On July 31, 2007, the eve of trial, the parties reached a settlement agreement in which they stipulated in relevant part as follows: "Judgment of adverse possession may enter in favor of the [plaintiffs], contingent upon [A.] [T]he new shared boundary line between the properties of the parties shall run the course as shown on the attached exhibits . . . . [E.] [The defendants] will apply for and pursue approval of a variance from the [zoning board of appeals of the town of Wallingford (board)] to permit this new shared boundary line at

their own expense on or before [November 30, 2007]. In default of [board] approval by [November 30, 2007], the parties will appear for trial in this matter, at the convenience of the court in December, 2007. The application shall be filed no later than [August 18, 2007]. [F.] Counsel for the [plaintiffs] will submit a letter to the [board], in support of the variance application. [G.] Upon approval of the variance above [the] parties will enter into a boundary agreement for the new boundary line in accordance herewith [and] record same on the land records." The agreement was signed by all of the parties on July 31, 2007, and was placed on the record before the court on that date. The defendants applied for a variance as required by the agreement on August 16, 2007.[1]

On August 31, 2007, the defendants filed a motion to open the settlement agreement,[2] alleging that their attorney, James Loughlin, "put them under 'duress' by stating at the beginning of the settlement negotiations: 'We are doing this settlement agreement today, I'm your attorney and this is what we are doing; if you don't want to do this now, then I am walking out that door, and you'll have to deal with [the plaintiffs' counsel] yourselves.' " The motion also alleged that their attorney would not answer several of their legal questions the day the agreement was reached and that he told them: "No one is allowed to speak to the judge." As an additional reason in support of their motion, the

---

[1] The variance requested an exception to Wallingford's minimum frontage requirement that would leave slightly less than the required 100 feet along the street line of the defendants' property.

[2] We note that the defendants' motion was entitled a "motion to reopen the settlement agreement . . . ." Because the agreement had not previously been opened, the use of that term is both improper and misleading. The appropriate phrase is "motion to open," and we reference it in this opinion accordingly. See *Rino Gnesi Co.* v. *Sbriglio*, 83 Conn. App. 707, 709 n.2, 850 A.2d 1118 (2004).

defendants contended that the plaintiffs violated the terms of the agreement on three occasions.[3]

After requesting numerous continuances from the board between September and November, 2007, the defendants withdrew their application for a variance on November 26, 2007, without a hearing by the board ever being held on its merits. The plaintiffs had recorded the agreement on the land records on September 14, 2007.

Upon the plaintiffs' motion, the court held a hearing to enforce the agreement on April 8, 2008, pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, 225 Conn. 804, 626 A.2d 729 (1993). The court also heard argument on the defendants' motion to open the agreement on that date. The court issued a memorandum of decision on May 8, 2008, in which it found that "the fears [the defendants] entertained after Mr. Loughlin's alleged threats and duress are incredulous. . . . The court finds the testimony of Mr. Loughlin to be totally credible and amply supported by the testimony of Thomas Tassmer [a relative of Kenneth Tassmer] and Carol Vance. All of that and the timetable of events and actions by the defendants render their explanation and claims of duress unbelievable and completely fabricated." The court further found that the defendants' claim that the plaintiffs breached a material clause of the agreement as justification for the defendants' breach "is the type of pleading that invites the imposition of sanctions." The court concluded that the agreement was clear and unambiguous and "order[ed] the defendants to proceed to perform in accordance with the terms of the July 31, 2007 settlement agreement." This appeal followed.

Before reaching the merits of the defendants' claims, we must first determine whether a final judgment exists

---

[3] This motion was filed pro se.

and, therefore, whether this court has subject matter jurisdiction over this appeal. "The lack of a final judgment implicates the subject matter jurisdiction of an appellate court to hear an appeal. A determination regarding . . . subject matter jurisdiction is a question of law . . . ." (Internal quotation marks omitted.) *Liberty Mutual Ins. Co.* v. *Lone Star Industries, Inc.*, 290 Conn. 767, 793, 967 A.2d 1 (2009). "The appellate courts have a duty to dismiss, even on [their] own initiative, any appeal that [they lack] jurisdiction to hear. . . . Neither the parties nor the trial court . . . can confer jurisdiction upon [an appellate] court. . . . The right of appeal is accorded only if the conditions fixed by statute and the rules of court for taking and prosecuting the appeal are met." (Internal quotation marks omitted.) *Brown & Brown, Inc.* v. *Blumenthal*, 288 Conn. 646, 654, 954 A.2d 816 (2008). The "policy considerations underlying the final judgment rule . . . are to discourage piecemeal appeals and to facilitate the speedy and orderly disposition of cases at the trial court level." (Internal quotation marks omitted.) *Palmer* v. *Friendly Ice Cream Corp.*, 285 Conn. 462, 468 n.7, 940 A.2d 742 (2008).

The defendants did not raise the final judgment issue themselves; this appeal was placed on the court's own motion calendar for January 14, 2009, and the parties were ordered to "appear and give reasons, if any, why the defendants' appeal from the trial court's memorandum of decision, dated May 8, 2008, should not be dismissed for lack of a final judgment, because, pursuant to subsection 1.E of the July 31, 2007 settlement agreement, further proceedings must take place before the zoning board of appeals that are not merely ministerial and that will determine whether a judgment of adverse possession may enter by stipulation or the parties will appear for trial." On January 14, 2009, this court marked the court's own motion "off at this time"

and ordered the parties to file simultaneous supplemental briefs "on the final judgment issue, and the effect, if any, of the withdrawal of the application for variance." Both parties filed supplemental briefs by January 28, 2009.

The defendants, having briefed the issue, contend that the court's decision ordering them to comply with the terms of the agreement was not a final judgment because the agreement is contingent on a hearing in front of, and action being taken by, the board.[4] The agreement provides that the defendants must apply for a variance from the board but provides no settlement contingency for what is to occur if the board declines to grant the variance application. Under the terms of the agreement, if the board were to deny the variance application, the parties' claims would not be settled and they would proceed to trial.

*State* v. *Curcio*, 191 Conn. 27, 463 A.2d 566 (1983), provides the standard by which to gauge the finality of a matter for purposes of an appeal, of an interlocutory order. "An otherwise interlocutory order is appealable in two circumstances: (1) where the order or action terminates a separate and distinct proceeding, or (2) where the order or action so concludes the rights of the parties that further proceedings cannot affect them." Id., 31. "[T]he *Curcio* standard precludes any provisional, tentative or conditional adjudication, and it focuses on the completion of all steps necessary for the adjudication of the claim, short of execution or enforcement." *CFM of Connecticut, Inc.* v. *Chowdhury*, 239 Conn. 375, 400, 685 A.2d 1108 (1996), overruled in part on other grounds by *State* v. *Salmon*, 250 Conn. 147, 154–55, 735 A.2d 333 (1999) (en banc).

[1] The plaintiffs seem to contend that the court's order was a final judgment because the defendants waived the provision in the agreement requiring board approval for the claims to be settled by breaching the contract, and, therefore, it was not a contingent agreement but an all-encompassing one.

We conclude that the court's action on April 8, 2008, was not an appealable final judgment. Under the second prong of *Curcio*, the court's order that the defendants proceed to perform under the agreement did not so conclude the rights of the parties that further proceedings could not affect them. "In applying this prong of the *Curcio* test, our focus is on whether appellate review is necessary [in order] to prevent the irreparable loss of a cognizable legal right. . . . An essential predicate to the applicability of this prong is the identification of jeopardy to [either] a statutory or constitutional right that the interlocutory appeal seeks to vindicate." (Internal quotation marks omitted.) *Johnson* v. *Clark*, 113 Conn. App. 611, 619–20, 967 A.2d 1222 (2009).

The defendants do not identify any cognizable legal right that will be jeopardized by the denial of appellate review. When the agreement was reached, it remained to be decided by the board whether to grant the variance. The agreement provides for the settlement of the parties' claims only if the board granted the variance in the future. If the defendants complied with the agreement, and sought to obtain a variance from the board, but their variance application was denied, it would be as if no agreement had ever been reached. Because the court's order of April 8, 2008, is not a final judgment, we lack subject matter jurisdiction.

The appeal is dismissed.