RONALD J. VANCE ET AL. *v.* KENNETH P.
TASSMER ET AL.
(AC 31754)

Gruendel, Alvord and Pellegrino, Js.

Argued January 13—officially released April 19, 2011

*William F. Gallager,* with whom, on the brief, was *Hugh D. Hughes,* for the appellants (defendants).

*Vincent T. McManus, Jr.,* for the appellees (plaintiffs).

ALVORD, J. The defendants, Kenneth P. Tassmer and Richard W. Perillo, appeal from the judgment of the trial court transferring to the plaintiffs, Ronald J. Vance and Carol P. Vance, title to real property claimed to be owned by the defendants. The defendants claim that the court's enforcement of the parties' settlement agreement, after a hearing held pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.,* 225 Conn. 804, 626 A.2d 729 (1993), was improper because the court (1) held that the agreement was clear and unambiguous, (2) decided issues of fact in the summary enforcement of the agreement and (3) rewrote the terms of the agreement. We reverse in part the judgment of the trial court.

The following facts and procedural history are necessary for the resolution of the claims on appeal. They were set forth in a previous opinion of this court, in which we dismissed the defendants' prior appeal because it had not been taken from a final judgment. *Vance* v. *Tassmer,* 115 Conn. App. 696, 975 A.2d 85 (2009). "The plaintiffs filed a one count complaint against the defendants with a return date of October 24, 2006, seeking a declaratory judgment that under the doctrine of adverse possession they were the owners of a triangularly shaped parcel of land located at the northwest corner of their lot at 131 Cook Hill Road in Wallingford, which borders the defendants' property. The plaintiffs purchased their lot in 1994. According to

the complaint, in 1984 Tassmer received by quitclaim deed certain real property located next to the plaintiffs' lot, at 133 Cook Hill Road.[1] In 1999, Tassmer conveyed an undivided half interest in this property to Perillo.

"On July 31, 2007, the eve of trial, the parties reached a settlement agreement in which they stipulated in relevant part as follows: 'Judgment of adverse possession may enter in favor of the [plaintiffs], contingent upon [A.] [T]he new shared boundary line between the properties of the parties shall run the course as shown on the attached exhibits . . . . [E.] [The defendants] will apply for and pursue approval of a variance from the [zoning board of appeals of the town of Wallingford (board)] to permit this new shared boundary line at their own expense on or before [November 30, 2007]. In default of [board] approval by [November 30, 2007], the parties will appear for trial in this matter, at the convenience of the court in December, 2007. The application shall be filed no later than [August 18, 2007]. [F.] Counsel for the [plaintiffs] will submit a letter to the [board], in support of the variance application. [G.] Upon approval of the variance [the] parties will enter into a boundary agreement for the new boundary line in accordance herewith [and] record same on the land records.'[2] The agreement was signed by all of the parties on July 31, 2007, and was placed on the record before the court on that date. The defendants applied for a

[1] The plaintiffs' chain of title and the defendants' chain of title descend from common grantors, Roger Tassmer and Muriel Tassmer, who are the parents of Kenneth Tassmer. The plaintiffs' immediate predecessor in title, Thomas Tassmer, is the brother of Kenneth Tassmer.

[2] The settlement agreement also provided that the plaintiffs were responsible for the costs of preparing and recording a survey of the new shared boundary line, that the plaintiffs would share equally the cost (up to $5000) of the defendants' installation of a continuation of the defendants' vinyl fence along the shared boundary line and that the parties were to install new mailboxes at different locations on their respective properties.

variance as required by the agreement on August 16, 2007.[3]

"On August 31, 2007, the defendants filed a motion to open the settlement agreement, alleging that [they had signed the agreement under duress]. . . . The motion also alleged that their attorney would not answer several of their legal questions the day the agreement was reached and that he told them [that no one was allowed to speak to the judge]. As an additional reason in support of their motion, the defendants contended that the plaintiffs violated the terms of the agreement on three occasions.[4]

"After requesting numerous continuances from the board between September and November, 2007, the defendants withdrew their application for a variance on November 26, 2007, without a hearing by the board ever being held on its merits. The plaintiffs had recorded the agreement on the land records on September 14, 2007.

"Upon the plaintiffs' motion, the court held a hearing to enforce the agreement on April 8, 2008, pursuant to *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, [supra, 225 Conn. 804]. The court also heard argument on the defendants' motion to open the agreement on that date. The court issued a memorandum of decision on May 8, 2008, in which it found that 'the fears [the defendants] entertained after [their attorney's] alleged threats and duress are incredulous. . . . The court finds the testimony of [their attorney] to be totally credible and amply supported by the testimony of Thomas Tassmer [a relative

---

[3] "The variance requested an exception to Wallingford's minimum frontage requirement that would leave slightly less than the required 100 feet along the street line of the defendants' property." *Vance* v. *Tassmer*, supra, 115 Conn. App. 698 n.1.

[4] "This motion was filed pro se." *Vance* v. *Tassmer*, supra, 115 Conn. App. 699 n.3.

of Kenneth Tassmer][5] and Carol Vance. All of that and
the timetable of events and actions of the defendants
render their explanation and claims of duress unbeliev-
able and completely fabricated.' The court further found
that the defendants' claim that the plaintiffs breached
a material clause of the agreement as justification for
the defendants' breach 'is the type of pleading that
invites the imposition of sanctions.' The court con-
cluded that the agreement was clear and unambiguous
and 'order[ed] the defendants to proceed to perform in
accordance with the terms of the July 31, 2007 settle-
ment agreement.' " *Vance* v. *Tassmer*, supra, 115 Conn.
App. 697–99. The defendants filed an appeal from that
decision, but this court dismissed it for lack of a final
judgment because "it remained to be decided by the
board whether to grant the variance." Id., 702.

After this court dismissed the defendants' appeal,
the plaintiffs filed a motion to reconvene the *Audubon*
hearing. The trial court granted the motion on Septem-
ber 3, 2009, and scheduled a hearing for September 24,
2009. On September 17, 2009, one week prior to the
scheduled hearing, Kenneth Tassmer filed the second
application for a variance with the board requesting
permission to reduce the frontage on the defendants'
property from the required 100 feet to 88.94 feet. In the
section of the application asking for a brief description
of the alleged hardship, he wrote: "There is no hardship,
but my neighbors, the [plaintiffs], have been crossing
the deeded [boundary] line to remove our plantings and
to replant flowers, shrubs, bushes and to place railroad
ties and their driveway encroaches our property and
they don't want to change the direction of their
driveway."

At the reconvened *Audubon* hearing, counsel for the
defendants indicated that they had filed an application

---

[5] See footnote 1 of this opinion.

for a variance pursuant to the settlement agreement and that it would be considered at the board's meeting scheduled for mid-October. Counsel for the plaintiffs argued that the filing of the application did not constitute good faith compliance with the settlement agreement because (1) Perillo was not named as one of the owners of the property and (2) Kenneth Tassmer expressly represented that there was no hardship caused by the application of the town's zoning regulations.[6] The court ordered the defendants to amend the second application to reflect the fact that they both owned the property and to indicate that the application was being filed pursuant to a court order. When the plaintiffs' counsel asked the court to order the defendants to pursue this variance application before the board in good faith, the court responded: "I assume that that's implicit in the court's comment to [the defendants' counsel] and in her accepting and agreeing that that's what they will do . . . . If it turns out that there is a hearing and the parties go in and behave in such a manner that I think they are circumventing the court's order and intention, I will deal with that subsequently."

The board held a hearing on the defendants' second application for a variance, as amended, on October 19, 2009. The defendants appeared without counsel and told the board members that they were representing themselves. The plaintiffs' counsel also was in attendance and made a presentation in support of the granting of the variance. After the chairman closed the public hearing, he made a motion to approve the variance. The motion was seconded, but the application was denied because there were not enough votes in favor of the motion.

---

[6] A unique hardship, imposed by conditions outside of the property owner's control, is a condition precedent to the issuance of a zoning variance. See *Michler* v. *Planning & Zoning Board of Appeals*, 123 Conn. App. 182, 185, 1 A.3d 1116 (2010).

The plaintiffs subsequently claimed that the defendants did not pursue the variance before the board in good faith. The court held a hearing on November 5, 2009, at which time the parties submitted a digital video disc (DVD) of the October 19, 2009 board hearing and a transcript of the proceedings.[7] The court reviewed the entire DVD and then requested argument from counsel. The plaintiffs claimed that the defendants waived their right to pursue a variance and that the court should enter an order conveying the parcel described in the settlement agreement to the plaintiffs. The defendants countered that the plaintiffs were asking the court to rewrite the agreement and that the matter now needed to be scheduled for a trial because the board had denied the variance. At the conclusion of the hearing, the defendants' counsel requested the opportunity to brief the issue of waiver in order to respond to the plaintiffs' memorandum of law that had been filed that day. The court granted the request.

On November 18, 2009, the court issued its memorandum of decision in which it made the following findings: (1) the defendants' counsel, with both defendants present, had assured the court at the September 24, 2009 hearing that the application for a variance would be pursued diligently and in good faith; (2) the court indicated at that time that it would take appropriate action if the defendants attempted to circumvent its order; (3) the defendants failed to address their statements and behavior before the board as reflected in the DVD and transcript reviewed by the court; (4) the proceedings before the board did not conform to the representations made before the court at the September 24, 2009 hearing; (5) there was no evidence that the defendants proceeded in good faith at the board's hearing on their

[7] Other exhibits submitted at the November 5, 2009 hearing included copies of the defendants' second application for a variance, the defendants' second application for a variance, as amended, and the plaintiffs' letter to the board in support of the requested variance.

application for a variance; and (6) "[t]he defendants practically asked for an adverse decision." Accordingly, the court granted the plaintiffs' motion requesting that the court enter a decree conveying the property described in the settlement agreement to the plaintiffs. This appeal followed.

The plaintiffs then filed a motion for articulation, requesting that the court articulate its decision by specifying whether "the refiling of the variance application with the [board] for the purpose of engineering its defeat was a waiver of that term of the settlement agreement so as to make that term no longer applicable in the agreement." The court granted the motion and filed the following articulation: "The actions of the defendants, as set forth in the court's decision and order, constituted a waiver of the term in the settlement agreement. Further, implicit in the court's decision is the court's conclusion that the defendants had determined to pursue their course of action before the [board] in order to nullify the effect of the settlement term. Therefore, the court also decided [that] they should be estopped from gaining the benefit of their action."

I

The defendants' first claim is that the court improperly held that the parties' settlement agreement was clear and unambiguous. Specifically, they argue that the language in § 1 (e) of the agreement provided an ambiguous remedy in the event the board did not approve the application for a variance. For that reason, they claim that the agreement could not be summarily enforced by the court.

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." (Internal quotation marks omitted.) *Hogan* v. *Lagosz*,

124 Conn. App. 602, 613, 6 A.3d 112 (2010), cert. denied, 299 Conn. 923, 11 A.3d 151 (2011). Because the defendants challenge the trial court's legal conclusion that the agreement was summarily enforceable, we must determine whether that conclusion is legally and logically correct and whether it finds support in the facts set out in the memorandum of decision. See id. In addition, to the extent that the defendants' claim implicates the court's factual findings, "our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) Id.

Section 1 (e) of the signed agreement provides: "[T]he [defendants] will apply for and pursue approval of a variance from the [board] to permit this new shared boundary line at their own expense on or before [November 30, 2007]. In default of [board] approval by [November 30, 2007], the parties will appear for trial in this matter at the convenience of the court in December, 2007. The application shall be filed no later than [August 18, 2007]."

A settlement agreement is a contract among the parties. *Amica Mutual Ins. Co.* v. *Welch Enterprises, Inc.*, 114 Conn. App. 290, 294, 970 A.2d 730 (2009). "Contract language is unambiguous when it has a definite and precise meaning . . . concerning which there is no reasonable basis for a difference of opinion. . . . The proper inquiry focuses on whether the agreement on its face is reasonably susceptible of more than one interpretation. . . . It must be noted, however, that the

mere fact that the parties advance different interpretations of the language in question does not necessitate a conclusion that the language is ambiguous. . . . [A]ny ambiguity in a contract must emanate from the language used in the contract rather than from one party's subjective perception of the terms." (Internal quotation marks omitted.) *Massey* v. *Branford*, 118 Conn. App. 491, 496–97, 985 A.2d 335 (2009), cert. denied, 295 Conn. 913, 990 A.2d 345 (2010).

The defendants do not contend that any of the wording in § 1 (e) of the agreement is latently ambiguous. They claim that the failure to obtain a variance mandates that the matter be scheduled for a trial, regardless of the reason for that failure. They argue that the provision becomes ambiguous if the reason for the failure to obtain the variance is considered by the court in determining whether to summarily enforce the agreement. We disagree.

In the present case, the defendants contracted to "apply for and pursue approval of a variance." The court determined, after a hearing, that they did not pursue the variance in good faith. Implicit in every contract is the common-law duty of good faith and fair dealing. "[I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, 117 Conn. App. 550, 563, 979 A.2d 1055, cert. denied, 294 Conn. 913, 983 A.2d 274 (2009).

As found by the trial court, Kenneth Tassmer, shortly after signing the settlement agreement, decided that he did not wish to honor the terms of that agreement. Upon convincing Perillo that they would prevail if the

matter went to trial, the defendants filed a motion to open the settlement agreement on the ground of duress. At the hearing on that motion held April 8, 2008, Kenneth Tassmer testified that he decided to repudiate the agreement the day he signed it and that "it took twenty-nine days to get Perillo on line." At the hearing before the board, Kenneth Tassmer stated: "We don't believe [the plaintiffs] have adverse possession. We believe if we go to trial, we would win."

In its November 18, 2009 memorandum of decision, the court concluded that "the defendants practically asked [the board] for an adverse decision." The defendants' argument that the agreement is ambiguous if the court is allowed to determine that they did not pursue the variance in good faith merits little discussion. It was not clearly erroneous for the court to have found that the defendants intentionally failed to honor the terms of the agreement and set out to sabotage any possibility of obtaining the variance because they came to believe that they would prevail if the case went to trial. To award them the remedy of a trial because the board did not grant the variance, when they "practically asked [the board] for an adverse decision," would lead to bizarre and unconscionable results.

Accordingly, the court's conclusion that the settlement agreement was summarily enforceable is legally and logically correct and is supported by the factual findings contained in the court's memoranda of decision filed May 8, 2008, and November 18, 2009.

## II

The defendants' next claim is that the court improperly decided issues of fact in a proceeding to summarily enforce the agreement. They argue that the court should not have made the factual finding that they were responsible for the denial of the variance application. The defendants maintain that there are genuine issues of

material fact as to causation with respect to the denial of the variance and as to whether their actions before the board were taken in bad faith. Such issues, they maintain, can only be resolved before the trier of fact in a breach of contract action. We disagree.

"Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings. . . . *When parties agree to settle a case, they are effectively contracting for the right to avoid a trial.*" (Emphasis added; internal quotation marks omitted.) *Rosenblit* v. *Laschever*, 115 Conn. App. 282, 288, 972 A.2d 736 (2009).

A settlement agreement, or accord, is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty. *Ackerman* v. *Sobol Family Partnership, LLP*, 298 Conn. 495, 532, 4 A.3d 288 (2010). "If there is a breach of the accord, the obligee has the option of either seeking enforcement of the original duty or seeking enforcement of any obligation under the accord." *Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*, supra, 225 Conn. 809. Accordingly, the plaintiffs in this case could have elected to proceed to trial on their adverse possession claim or sought the summary enforcement of the settlement agreement by the court in the same action. See id.

When the defendants failed to abide by the terms of the agreement, the plaintiffs elected to file a motion to seek enforcement of the agreement. In an *Audubon* hearing, the court found the agreement to be clear and

unambiguous and that it had not been signed by the defendants under duress. The court ordered the defendants to proceed in accordance with the terms of the settlement agreement in its May 8, 2008 memorandum of decision.

Seemingly pursuant to the court's order, the defendants did refile an application for the variance. After the hearing before the board, however, the plaintiffs claimed that the defendants had not proceeded in good faith, and the court held an evidentiary hearing. The defendants have cited no case law that prohibits the taking of evidence, from which the trier of fact can make findings of fact, under such circumstances. At the hearing, the plaintiffs claimed that the defendants waived their right to pursue a variance and filed a brief in support of that claim. A transcript and DVD of the hearing were submitted as evidence, without objection by the defendants. The court, upon their request, allowed the defendants to file a posthearing brief on the issue of waiver. The defendants were not precluded from submitting evidence to substantiate their claim that they had acted in good faith. We conclude that the issue of waiver was clearly presented, disputed and then properly resolved by the court.

"Waiver is the intentional relinquishment or abandonment of a known right or privilege. . . . As a general rule, both statutory and constitutional rights and privileges may be waived. . . . Waiver is based upon a species of the principle of estoppel and where applicable it will be enforced as the estoppel would be enforced. . . . Estoppel has its roots in equity and stems from the voluntary conduct of a party whereby he is absolutely precluded, both at law and in equity, from asserting rights which might perhaps have otherwise existed . . . . Waiver does not have to be express, but may consist of acts or conduct from which waiver may be implied. . . . In other words, waiver may be inferred

from the circumstances if it is reasonable to do so." (Internal quotation marks omitted.) *Wiele* v. *Board of Assessment Appeals*, 119 Conn. App. 544, 549, 988 A.2d 889 (2010). Waiver is a question of fact, subject to the clearly erroneous standard of review. Id.

In its articulation filed February 22, 2010, the court found that the actions of the defendants, as set forth in its November 18, 2009 memorandum of decision, constituted a waiver of the variance provision in the settlement agreement. Those actions, according to the court, demonstrated that the defendants did not proceed in good faith. Whether a party has acted in bad faith is a question of fact. *Harley* v. *Indian Spring Land Co.*, 123 Conn. App. 800, 837, 3 A.3d 992 (2010). "Bad faith in general implies both actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties, but by some interested or sinister motive. . . . Bad faith means more than mere negligence; it involves a dishonest purpose. . . . [B]ad faith may be overt or may consist of inaction, and it may include evasion of the spirit of the bargain . . . ." (Internal quotation marks omitted.) *Keller* v. *Beckenstein*, supra, 117 Conn. App. 563–64.

The court's factual findings find ample support in the record. At the hearing before the board, Perillo first read from a prepared statement: "We are applying for this variance because we signed an agreement in court. By being here, we complied with that order. We want to make it perfectly clear that [the plaintiffs' counsel] does not represent us; we are representing ourselves. There is actually no hardship for us except that we would have to go back to [the] Superior Court and have a trial on the issue of [the] adverse possession claim. We're okay with that. We do not agree with [the plaintiffs' counsel] that our neighbors, [the plaintiffs], own

part of our property. We don't believe . . . they have adverse possession. We believe if we go to trial, we would win."

Later in the hearing, Perillo repeatedly stressed the fact that there had not been a trial on the adverse possession claim. "[O]ur lawyer wasn't allowed to do anything. It was an *Audubon* [hearing], it wasn't a trial. We would like a trial. It was just an *Audubon* [hearing] where our lawyer was just told to be silent and [the plaintiffs' counsel] ran the whole show. It wasn't a trial. It was an *Audubon* [hearing]. We would like a trial." When the plaintiffs' counsel made a presentation in support of granting the variance, Perillo stated: "But as I said, [the plaintiffs] don't have fifteen years, and we would prove that in a court of law, and we don't get a chance to go to court."

In finding that the defendants did not act in good faith at the hearing before the board, the court had reviewed the transcript of the proceeding. Significantly, it also had the DVD of that proceeding in which it could observe the defendants' demeanor and attitude. "[T]he trial court, as trier of fact, determine[s] who and what to believe and the weight to be accorded the evidence. The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . We have constantly held to the rule that we will not judge the credibility of witnesses or substitute our judgment for that of the trial court." (Internal quotation marks omitted.) *Nanni* v. *Dino Corp.*, 117 Conn. App. 61, 67–68, 978 A.2d 531 (2009). In this case, we cannot conclude that the court's finding that the defendants waived the variance provision in the settlement agreement by their failure to pursue the variance in good faith was clearly erroneous.

## III

The defendants' final claim is that the court improperly rewrote the terms of the settlement agreement. Specifically, they argue that the court exceeded its authority by eliminating § 1 (e) of the agreement and by conveying the real property described in that agreement to the plaintiffs. We already have concluded that the court's finding that the defendants waived § 1 (e) of the agreement, i.e., the variance provision, was not clearly erroneous. We agree, however, that the court exceeded the parameters of the agreement when it conveyed the property to the plaintiffs.

It is axiomatic that courts do not rewrite contracts for the parties. *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 760, 674 A.2d 1313 (1996). In determining whether the court went beyond the scope of the settlement agreement in rendering a judgment award against the defendants, we review the court's decision for an abuse of discretion. See *Waldman* v. *Beck*, 101 Conn. App. 669, 673, 922 A.2d 340 (2007). "[T]he court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement. See *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986) ('[i]n determining the details of relief [pursuant to a settlement agreement], the judge may not award whatever relief would have been appropriate after an adjudication on the merits, but only those precise forms of relief that are either agreed to by the parties . . . or fairly implied by their agreement' . . . )." *Waldman* v. *Beck*, supra, 673–74.

The parties' settlement agreement provided that "judgment of adverse possession may enter in favor of the plaintiffs, contingent upon" various enumerated

conditions. Although it has been determined that § 1 (e) was waived by the defendants and is no longer applicable, there are other conditions in the agreement that were agreed to by the parties that require completion. For example, the plaintiffs, at their expense, are obligated to record a mylar copy of the revised survey of the parties' shared boundary line in the Wallingford land records. Also, the parties are to sign a boundary agreement reflecting the new boundary line and record that document in the land records. Further, the plaintiffs agreed to share the cost of the defendants' installation of a continuation of the defendants' vinyl fence along the shared boundary line equally with the defendants, up to $5000. Additionally, the parties are to install new mailboxes at different locations on their respective properties.

The court had granted the plaintiffs' motion to enforce the settlement agreement and found that the defendants had waived one of its provisions. Nevertheless, this was not a contempt proceeding. Accordingly, pursuant to the agreement, the court should have rendered a judgment of adverse possession in favor of the plaintiffs and ordered compliance with all terms of the agreement except for the variance contingency. At that stage of the proceedings, the court exceeded the scope of the settlement agreement by conveying to the plaintiffs the property described in the agreement.[8]

---

[8] If the defendants fail to comply with the terms of the settlement agreement after this case is remanded and the trial court renders judgment in accordance with this opinion, the plaintiffs can seek relief for the defendants' failure to comply with the trial court's orders. General Statutes § 52-22 provides: "The Superior Court in the exercise of its equitable jurisdiction may pass the title to real property by decree, without any act on the part of any party holding title to the real property, when in its judgment it is the proper mode to carry the decree into effect. When the decree is recorded in the land records in the town where the real property is situated, it shall be, while in force, as effectual to transfer the real property as the deed of the party or parties holding title." We emphasize that a court is not without power to enforce its judgments. "While a consent judgment may not be enlarged or lessened, the trial court may, once noncompliance is determined,

The judgment is reversed as to the order conveying the real property described in the settlement agreement to the plaintiffs and the case is remanded with direction to render a judgment of adverse possession in favor of the plaintiffs contingent on the parties' compliance with the terms of the settlement agreement, except for the variance contingency. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

in the exercise of its equitable powers, fashion whatever orders are required to protect the integrity of the original judgment." *Carpenter* v. *Montanaro*, 52 Conn. App. 55, 58, 725 A.2d 390 (1999).