******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

CELIA WHEELER ET AL. *v.* BEACHCROFT,
LLC, ET AL.
(AC 44348)

Moll, Alexander and Suarez, Js.

*Syllabus*

The defendant B Co., which owned a portion of a residential housing develop-
ment adjacent to Long Island Sound, appealed to this court from the
judgment of the trial court summarily enforcing a settlement agreement
among the parties to resolve a dispute over access to the shore. The
plaintiffs, who owned interior lots in the development, had brought an
action to quiet title to an avenue that ran through the development as
well as to a lawn that abuts the sound at the end of the avenue. After
most of the parties' claims were resolved during the course of the
litigation, counsel for some of the parties informed the trial court that
all of the parties had reached a settlement agreement and, thereafter,
entered two interrelated agreements on the record during a pretrial
hearing. The settlement agreement required, inter alia, that B Co. would
quitclaim the avenue to the town of Branford and P Co., a municipal
subdivision of the town, and grant the town an easement for the repair,
maintenance and replacement of a certain drainpipe at the end of the
avenue that ran toward the sound. After the court ordered that the case
had been reported settled, B Co. claimed that the defendants J and E,
who owned a waterfront lot in the development, had interfered with
the execution of the settlement agreement. B Co. filed a motion seeking
an order that J and E were bound by the agreement and had no right
to interfere with its implementation but later withdrew its motions for
order and to bind. J and E claimed that they were not bound by the
agreement. At a later hearing on motions to enforce the agreement that
were filed by the plaintiffs, the town and P Co., in which they asserted
that J and E were not bound by the agreement, the plaintiffs' counsel
did not represent that J and E had signed off on the agreement. The court
then ordered the plaintiffs' counsel to file a proposed order regarding
enforcement of the agreement. The court thereafter granted the plain-
tiffs' motions to enforce the agreement, concluding that J and E were
not parties to the agreement and entering certain orders to implement
the agreement. *Held*:

1. B Co. could not prevail on its claim that the trial court erred in finding
that J and E were not parties to the settlement agreement, which was
based on B Co.'s assertions that whether they were parties to the agree-
ment was not before the court, that the record did not support the
court's finding and that the court failed to conduct an evidentiary hearing
on the matter:

a. In determining that J and E were not parties to the settlement agree-
ment, the trial court addressed a question that was relevant to its adjudi-
cation of the motions to enforce the agreement, and, notwithstanding
B Co.'s claim that the issue of whether J and E were parties to the
agreement was not before the court as a result of its withdrawal of prior
motions it filed to bind them to the agreement, the status of J and E
was squarely before the court vis--vis the parties' motions to enforce
the agreement.

b. The trial court did not abuse its discretion in finding that J and E
were not parties to the settlement agreement: during the pretrial hearing,
counsel for J and E unequivocally conveyed to the court that J and E
were not in agreement with the terms of the agreement, which no party
disputed, and counsel for J and E was not present when the plaintiffs'
counsel, without mentioning J and E, subsequently entered the agreement
on the record; moreover, the agreement, which imposed no obligations
on J and E, provided that it was without prejudice as to any claims by
or against them, and B Co.'s counsel did not identify J and E as parties,
and thereafter took the position that B Co. had not required J and E to
approve the agreement; furthermore, statements made by the plaintiffs'
counsel when he entered the agreement on the record and during the
subsequent hearing on the motions to enforce the agreement reasonably

could be construed to indicate that J and E, although not joining the settlement agreement, were not objecting to the other parties' presenting the agreement to the court.

c. The trial court did not abuse its discretion by not conducting an evidentiary hearing as to whether J and E were parties to the settlement agreement: prior to and at the hearing on the motions to enforce the agreement, B Co. did not pursue opportunities it had to make a request to introduce evidence on that issue; moreover, at the hearing on the motions to enforce the agreement, B Co.'s counsel answered affirmatively when asked directly by the court to confirm that B Co. was no longer seeking an order binding J and E to the agreement, and B Co.'s counsel made no response to the court's statements that it did not believe it was necessary to hear evidence with respect to the motions to enforce.

2. Contrary to B Co.'s assertion, the trial court did not alter or omit material terms contained in the settlement agreement when it entered orders to implement the agreement, except for the court's failure to include notice and cooperation terms the agreement explicitly required:

a. This court determined that, under its case law, the abuse of discretion standard of review applied to its consideration of B Co.'s claims.

b. The trial court did not abuse its discretion in its orders implementing certain material terms of the settlement agreement in its enforcement decision, as the court reasonably determined that Long Island Sound was the southern boundary of a view easement contained in the settlement agreement, it did not fail to order that the settlement agreement was contingent on the execution of certain quitclaim deeds and releases, this court having perceived no appreciable difference between the parties' agreement that the settlement agreement was contingent on the execution of the documents at issue and the court's ordering that all settlement documents, which included those at issue, shall be executed, the enforcement decision did not create confusion in describing the area in which sitting and recreating was prohibited, as this court perceived no appreciable difference between the description of that area in the settlement agreement and the enforcement decision, the court's enforcement decision, read in its entirety, provided, contrary to B Co.'s claim, that the town may maintain, repair and replace the drainpipe, the court did not improperly omit, as B Co. claimed, a cooperation clause from its enforcement decision, as the agreement contained no sweeping cooperation clause but required the parties to cooperate as to the town's acquisition of the avenue and as to other necessary approvals, and the court did not improperly omit an order requiring the withdrawal and release of claims by the parties in a related action.

c. The trial court improperly failed to include in its enforcement decision an order that the town was required to provide reasonable notice to and cooperate with B Co. in scheduling repair work on the drainpipe on B Co.'s property for which the town had an easement: the notice and cooperation terms were set forth explicitly in the settlement agreement, the court did not include or refer to them in its enforcement decision, and this court did not read them to be implicit in that decision; moreover, it was apparent that the court intended to have the enforcement decision encompass all material terms of the settlement agreement.

Argued November 9, 2021—officially released February 22, 2022

*Procedural History*

Action seeking, inter alia, a judgment declaring that certain real property is a public way, and for other relief, brought to the Superior Court in the judicial district of New Haven and transferred to the judicial district of Hartford, Complex Litigation Docket, where the court, *Bright, J.*, granted the motions by James R. McBurney et al. to intervene as party defendants; thereafter, the court, *Shapiro, J.*, granted the motion of Peter Paquin et al. to intervene as party plaintiffs and to file an intervening complaint; subsequently, count one of the plaintiffs' and the intervening plaintiffs' complaints were tried to the court, *Bright, J.*; judgment for the named defendant on count one of the plaintiffs' and

intervening plaintiffs' amended complaints; thereafter, the court, *Bright, J.*, granted in part the motions for summary judgment filed by the named defendant and the intervening defendants on the remaining counts of the plaintiffs' amended complaint and rendered partial judgment thereon, from which the named defendant and the intervening defendants filed separate appeals with the Supreme Court, which affirmed the trial court's judgment; subsequently, the named defendant filed a cross claim as against the defendant James R. McBurney et al.; thereafter, the court, *Moukawsher, J.*, denied the motion for sanctions filed by the defendant James R. McBurney et al., and granted the motions filed by the named plaintiff et al. to enforce the parties' settlement agreement and rendered judgment thereon, from which the named defendant appealed to this court. *Reversed in part; judgment directed.*

*Richard P. Colbert*, with whom were *Matthew J. Letten* and *Gerald L. Garlick*, for the appellant (named defendant).

*Joel Z. Green*, with whom, on the brief, was *Linda Pesce Laske*, for the appellees (named plaintiff et al.).

*Peter J. Berdon*, for the appellee (plaintiff Pine Hill Orchard Association, Inc.).

*Thomas J. Donlon*, for the appellee (defendant town of Branford).

*Michael S. Taylor*, with whom were *Brendon P. Levesque* and, on the brief, *Peter J. Zarella*, for the appellees (defendant James R. McBurney et al.).

*Opinion*

MOLL, J. This appeal is the latest episode in what our Supreme Court has described as "a nearly century old dispute among neighbors in a housing development along the Long Island Sound (sound) over access to the shore."[1] *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 148, 129 A.3d 677 (2016). The defendant Beachcroft, LLC,[2] appeals from the judgment of the trial court summarily enforcing a settlement agreement entered on the record on the eve of trial. On appeal, the defendant claims that the court (1) committed error in making a finding that two intervening defendants, the McBurneys, were not parties to the settlement agreement, and (2) improperly altered or omitted material terms of the settlement agreement in summarily enforcing the settlement agreement.[3] We reverse the judgment of the trial court only insofar as the court's decision summarily enforcing the settlement agreement omitted certain terms of the settlement agreement, and we affirm the judgment in all other respects.

The following facts, as drawn from a previous decision of our Supreme Court, and procedural history are relevant to our resolution of this appeal. The dispute in this matter centers on "a housing development (development) that is located adjacent to the sound on Crescent Bluff Avenue (avenue) in the town of Branford. . . . The development consists of thirty-five lots in a long and narrow five acre tract of land. The narrow end of the development borders the sound to the south, with the avenue running north to south through the development and perpendicular to the sound. Thirty-one lots line the avenue in the interior of the development. The avenue runs between the four waterfront lots, with two lots on each side. The avenue ends at a small strip of land (lawn) directly abutting the sound . . . ." (Citation omitted.) Id., 150. The plaintiffs own interior lots in the development, the McBurneys and Lowlicht and Haedicke[4] own waterfront lots in the development, and the defendant owns the avenue and part of the lawn in the development. Id. In addition, there appears to be no dispute that the intervening plaintiffs also own interior lots in the development.

In 2009, pursuant to General Statutes § 47-31,[5] the plaintiffs commenced the present quiet title action. The plaintiffs' third amended complaint, their operative complaint filed on October 9, 2018, contained eleven counts asserting various rights with respect to the avenue and the lawn that were adverse to any interests claimed by the defendant, the town, Pine Orchard Association, Inc., the intervening plaintiffs, the McBurneys, and/or Lowlicht and Haedicke. The intervening plaintiffs' amended complaint, their operative complaint filed on July 12, 2012, contained eleven counts that substantively tracked the plaintiffs' claims.[6] Additionally, pursuant to § 47-31 (d),[7] the defendant, the town,

Pine Orchard Association, Inc.,[8] and Lowlicht and Haedicke claimed interests in the avenue and the lawn. The McBurneys did not file an answer and made no statement pursuant to § 47-31 (d). Over the course of the litigation, either by way of summary judgment or following trial, the trial court ruled against the plaintiffs and the intervening plaintiffs with respect to most of their claims.[9] The remaining claims were scheduled to be tried on February 3, 2020.

On January 31, 2020, during a hearing conducted by the court, *Moukawsher, J.*, to address pretrial matters, the court granted an oral motion made by the plaintiffs' counsel to continue the trial to February 4, 2020, to provide the parties with additional time to continue ongoing settlement negotiations. On February 4, 2020, with counsel for some, but not all, of the parties present before the court, two interrelated settlement agreements were entered on the record. The plaintiffs' counsel recited the terms of the first settlement agreement, and the town's counsel set forth the terms of the second settlement agreement (collectively, settlement agreement).[10] The settlement agreement required, inter alia, (1) the defendant to quitclaim a portion of the lawn, along with an existing stairway and a triangular piece of property containing the stairway, which together provided access from the avenue to the shore, to Pine Orchard Association, Inc., (2) the parties to the settlement agreement to "exchange mutual general releases and . . . withdraw all pending claims and actions by them," (3) the defendant to quitclaim the avenue to the town and to grant the town an easement to repair, maintain, and replace a drainpipe, and (4) the town to pay the defendant $200,000. The same day, the court ordered that the case had been reported settled and that, unless withdrawn sooner, the case would be dismissed on May 19, 2020.

On March 2, 2020, the defendant filed a motion titled "Motion for Order (in Aid of Settlement)" (motion for order). The defendant asserted that, following the February 4, 2020 hearing, the McBurneys had engaged in conduct interfering with the execution of the settlement agreement. As relief, the defendant requested that the court order that the McBurneys (1) were bound by the settlement agreement and (2) "ha[d] no rights to take any action to interfere with the implementation of the settlement agreement."[11] On March 5, 2020, the McBurneys filed an objection, arguing, inter alia, that they were not parties to the settlement agreement. Additionally, the McBurneys requested that the court sanction the defendant for filing the motion for order in bad faith, vexatiously, wantonly, or oppressively.

On May 22, 2020, the plaintiffs, the town, and Pine Orchard Association, Inc., each filed a motion to summarily enforce the settlement agreement. In their respective motions, the movants asserted that the

McBurneys were not parties to the settlement agreement. On the same day, the defendant filed a motion captioned "Motion to Bind McBurneys to Settlement Agreement" (motion to bind), requesting that the court order that the McBurneys (1) had no rights with respect to its property, (2) were estopped from claiming any right to interfere with the settlement agreement, and/or (3) had waived any right to interfere with the settlement agreement.

On June 12, 2020, the defendant withdrew the motion for order and the motion to bind. On the same day, the defendant filed a "response" to the motions to summarily enforce the settlement agreement, stating, inter alia, that it agreed that a global settlement had been reached, and that, therefore, the court did not need to adjudicate the pending motions.

On July 1, 2020, the court conducted a hearing on the motions to summarily enforce the settlement agreement and the McBurneys' request for sanctions against the defendant. No evidence was offered or admitted during the hearing. After hearing argument from the parties, the court ordered the plaintiffs' counsel to file a proposed order regarding enforcement of the settlement agreement. The court also reserved its ruling on the McBurneys' request for sanctions against the defendant.

On July 9, 2020, in accordance with the court's July 1, 2020 order, the plaintiffs filed a proposed order (original proposed order). On July 14, 2020, the defendant filed an objection to the original proposed order.

On July 14, 2020, the court denied the McBurneys' request for sanctions against the defendant. In its order, the court stated that "[the McBurneys] were not part of the settlement [agreement] . . . ."

On August 4, 2020, the court conducted a hearing to address the defendant's objections to the original proposed order. On August 5, 2020, the plaintiffs filed an amended proposed order (amended proposed order), to which the defendant filed an objection on August 6, 2020.

On August 11, 2020, the court issued a memorandum of decision granting the motions to summarily enforce the settlement agreement (enforcement decision). As part of the enforcement decision, the court found that the McBurneys had "declined to participate in the settlement agreement . . . ." In addition, the court entered orders to implement the terms of the settlement agreement. On August 31, 2020, the defendant filed a motion to reargue, which the court denied on October 9, 2020. This appeal followed. Additional facts and procedural history will be set forth as necessary.

Before we analyze the defendant's claims, we set forth the following general legal principles relevant to our resolution of this appeal. "In [*Audubon Parking Associates Ltd. Partnership* v. *Barclay & Stubbs, Inc.*,

225 Conn. 804, 626 A.2d 729 (1993) (*Audubon*)], our Supreme Court determined that a settlement agreement resolving the issues in a pending case may be enforced prior to and without the necessity of a trial: A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous. . . . Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit. A court's authority to enforce a settlement by entry of judgment in the underlying action is especially clear where the settlement is reported to the court during the course of a trial or other significant courtroom proceedings." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Lagosz*, 189 Conn. App. 828, 837, 209 A.3d 709, cert. denied, 333 Conn. 912, 215 A.3d 1210 (2019). "Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial." (Internal quotation marks omitted.) Id., 838. "Nevertheless, the right to enforce summarily a settlement agreement is not unbounded. The key element with regard to the settlement agreement in *Audubon* . . . [was] that there [was] no factual dispute as to the terms of the accord. Generally, [a] trial court has the inherent power to enforce summarily a settlement agreement as a matter of law [only] when the terms of the agreement are clear and unambiguous . . . and when the parties do not dispute the terms of the agreement. . . . The rule of *Audubon* effects a delicate balance between concerns of judicial economy on the one hand and a party's constitutional rights to a jury and to a trial on the other hand. . . . To use the *Audubon* power outside of its proper context is to deny a party these fundamental rights and would work a manifest injustice." (Citations omitted; internal quotation marks omitted.) *Reiner* v. *Reiner*, 190 Conn. App. 268, 277, 210 A.3d 668 (2019).

I

We first turn to the defendant's claim that the trial court improperly made a finding that the McBurneys had "declined to participate in the settlement agreement," which, in essence, is akin to a finding that the McBurneys were not parties to the settlement agreement. This claim is unavailing.

To put the defendant's claim in its proper context, we set forth the following additional facts and procedural history. On January 31, 2020, respective counsel for the plaintiffs, the defendant, the town, Pine Orchard Association, Inc., the McBurneys, and Lowlicht and Haedicke appeared before the court to discuss several pretrial matters.[12] During the hearing, the plaintiffs'

counsel stated that "very substantial progress" was being made to settle the case and that a "tentative agreement" had been reached with respect to the plaintiffs. The defendant's counsel commented that, "[b]etween [the plaintiffs] and [the defendant] we have an understanding, subject to documentation, as to how we can resolve this case." The town's counsel indicated that the town was "prepared if there's a global resolution . . . ." Counsel for Lowlicht and Haedicke stated that Lowlicht and Haedicke "agree to that part of the settlement that affects them. [They] don't stand in the way of it. [They are] not really affected by it, but [they] don't stand in the way of it."

The McBurneys' counsel informed the court that "the settlement that's proposed has been circulated to [the McBurneys] as well, and they cannot buy in or agree to those terms. I've articulated this to, I believe, all counsel. And I believe if this settlement is entered, that there would be continuing litigation concerning this property, although in a different facet." The McBurneys' counsel further stated that, although the proposed settlement would "extinguish this case," the "potential settlement may result in additional litigation unrelated to this particular matter, but directly related to the settlement." The plaintiffs' counsel responded that "the disposition of this case" would not be "affect[ed]." The defendant's counsel did not reply to the statements of the McBurneys' counsel.

On February 4, 2020, respective counsel for the plaintiffs, the defendant, the town, Pine Orchard Association, Inc., and the McBurneys appeared before the court. At the outset, the plaintiffs' counsel informed the court that "the plaintiffs have reached an agreement with [the defendant] and [the defendant's principal member] on terms and conditions of settlement, which we would like to recite for the record." Immediately thereafter, the court monitor began experiencing technological difficulties, and the court took a recess. Following the recess, respective counsel for the plaintiffs, the defendant, and the town reappeared before the court. The plaintiffs' counsel stated that counsel for Pine Orchard Association, Inc., and counsel for the McBurneys had left to attend to other matters. The plaintiffs' counsel continued: "However, we do have a—their consent. We have an agreement. We have . . . terms and conditions that all of the parties have agreed to in settlement of this claim."[13] The plaintiffs' counsel further noted that, although counsel for Lowlicht and Haedicke was not present, he was "familiar with the terms and conditions." In reciting the terms of the first of the two settlement agreements, the plaintiffs' counsel stated that "it is [the plaintiffs'] intention to withdraw without prejudice the claims against . . . the McBurneys . . . and Lowlicht and Haedicke with the understanding that the McBurneys and Lowlicht [and] Haedicke will similarly withdraw without prejudice . . . any pleadings, their

defenses, and any statements of interest [pursuant to § 47-31 (d)] that they had filed in this case."

The defendant's counsel stated that the terms of the settlement agreement as recited were accurate, with the exception of one minor misstatement made by the plaintiffs' counsel. The following exchange then occurred:

"[The Defendant's Counsel]: . . . [J]ust to make it clear, these two settlements that were reported are interdependent. This is a global settlement. If one falls through, the other one doesn't happen.

"The Court: You mean the town's and the plaintiffs'?

"[The Defendant's Counsel]: And the plaintiffs'—

"The Court: Yeah.

"[The Defendant's Counsel]: —interior lot owners, [the defendant].

"The Court: Right.

"[The Defendant's Counsel]: It all has to happen or nothing happens."

In the defendant's motion for order, the defendant asserted that, following the February 4, 2020 hearing, the McBurneys had (1) threatened to file a lawsuit if the settlement agreement was effectuated, (2) contacted Pine Orchard Association, Inc., to try to "block the settlement [agreement]," and (3) claimed that the settlement agreement was "'unenforceable.'" The defendant contended that it had not "require[d] the McBurneys to approve the settlement [agreement]" because, as averred in an accompanying affidavit of the defendant's counsel, the McBurneys' counsel had advised the defendant's counsel on February 4, 2020, before the terms of the settlement agreement had been read into the record, that the McBurneys "were not going to do anything to interfere with the settlement [agreement]." The defendant asked the court to order that the McBurneys (1) were bound by the settlement agreement and (2) "ha[d] no rights to take any action to interfere with the implementation of the settlement agreement."

In their objection to the motion for order, the McBurneys maintained that they were not parties to the settlement agreement and denied making any assurance "to 'not interfere' with the settlement [agreement]." They stated, as averred in an accompanying affidavit of their counsel, that, on January 31, 2020, during settlement discussions and in open court, their counsel conveyed that they were not endorsing the terms of the settlement being negotiated, particularly insofar as the settlement would permit the defendant to erect a fence that the McBurneys believed violated their property rights. They further stated that (1) their counsel did not participate in settlement discussions following the January 31, 2020

hearing, (2) in an e-mail thread generated on February 3, 2020, notifying the clerk of the trial court that a settlement had been reached, the plaintiffs' counsel indicated that the plaintiffs would be withdrawing their claims as to the McBurneys such that it was the McBurneys' counsel's "choice" whether he wanted to appear before the court the next day, and (3) during the recess taken on February 4, 2020, their counsel left to attend another matter under the impression that all parties were aware that the McBurneys were not in agreement with the settlement terms.

On May 13, 2020, the court ordered, along with an attendant briefing schedule, that May 22, 2020, was the deadline by which the parties were permitted to file motions to summarily enforce the settlement agreement. On May 15, 2020, the defendant filed a motion seeking a court order requiring that any responses to discovery requests that it had served on the plaintiffs, the McBurneys, and Pine Orchard Association, Inc., dated May 15, 2020, be served on or before June 1, 2020. The defendant contended that the discovery requests sought the production of documents that were "relevant and material to the motions that will soon be filed with regard to the settlement agreement . . . ." In subsequent filings, the defendant clarified that the discovery would "be material and relevant to the issue of what interest the McBurneys are suddenly . . . claiming in [the defendant's] property." On June 4, 2020, the court denied the defendant's motion without prejudice, stating that "[t]he court's first obligation is to review the words the parties used without resort to unexpressed intentions. If the moving party claims the matter cannot be resolved without the documents at issue it should make this argument in its briefing." The same day, in denying a case flow request filed by the plaintiffs seeking an emergency status conference, the court stated that "[the defendant] has been ordered to make its case for the discovery in the briefing related to enforcement. Any party objecting to the need for this discovery should do the same. The court will determine whether discovery is needed when considering first whether enforcement may be considered without discovery. No party need comply with the [defendant's discovery] requests until further order of the court."

In their motion to summarily enforce the settlement agreement, the plaintiffs asserted that the defendant was refusing to abide by the settlement agreement on the basis of its insistence either that the McBurneys were parties to the settlement agreement or that the settlement agreement was contingent on the McBurneys being or becoming parties thereto. The plaintiffs contended that the McBurneys were not parties to the settlement agreement, which, the plaintiffs posited, "[the defendant] was fully aware of when [it] agreed to the terms of the [settlement] agreement and knew when the [settlement] agreement was recited into the record."

As relief, the plaintiffs asked the court to summarily enforce the settlement agreement "entered into by the parties and as presented to the court." In the town's motion, the town asserted that "[i]t was agreed to and reported that the settlement agreement . . . did not need to involve [the McBurneys and Lowlicht and Haedicke]; further, that these parties had been advised through their attorneys of record of the details of the settlement agreement, and that the plaintiffs would withdraw the claims against them. It was mutually acknowledged and understood by [respective] counsel that this withdrawal would moot the defenses and statements of interest [pursuant to § 47-31 (d)] that they had filed, allowing the case to be withdrawn, and leaving them to resolve, if they wished, their separate interests as waterfront property owners, either by discussion or by a separate action." As relief, the town requested that the court summarily enforce the settlement agreement "as between and among the parties to it . . . ." Pine Orchard Association, Inc., adopted and incorporated the town's arguments into its respective motion.

In the defendant's motion to bind, the defendant set forth several arguments supporting its claim that the "settlement agreement should be binding on the McBurneys." As relief, the defendant sought a court order providing that the McBurneys (1) had no rights in its property, (2) were estopped from claiming any right to interfere with the settlement agreement, and/or (3) had waived any right to interfere with the settlement agreement.

In the defendant's so-called response to the motions to summarily enforce the settlement agreement, filed following the withdrawals of the motion for order and the motion to bind, the defendant stated that it "agree[d], as it ha[d] consistently claimed, that all parties entered into a global settlement agreement [and] that it is fully enforceable as [to] all parties." (Emphasis omitted.) The defendant argued that the court did not need to consider the motions to summarily enforce the settlement agreement because the defendant was prepared to "effectuat[e] the settlement [agreement] among all parties and then [enjoy] the benefits they bargained for under that agreement." The defendant further stated that it "maintain[ed] that the McBurneys ha[d] no rights over [its] property and what, if any, rights they had were waived and/or are estopped. Once the settlement agreement [was] fully implemented, [it] intend[ed] to fully exercise and enjoy any and all of its right[s] under the agreement. If that result[ed] in the McBurneys claiming some purported rights, [it would] dispense with those claims at that time."

The issue of whether the McBurneys were parties to the settlement agreement was addressed during the July 1, 2020 hearing on the motions to summarily enforce the settlement agreement and the McBurneys' request

for sanctions against the defendant. To start, the court explained its understanding that, with respect to the McBurneys, all that was required under the settlement agreement was a withdrawal of the plaintiffs' claims against them. The court then questioned whether, to the extent that the McBurneys were seeking to claim rights that were inconsistent with the settlement agreement and to the extent that the defendant had arguments in defense against those claims, such claims and arguments were appropriate to raise in the present action rather than in a separate proceeding. Relatedly, the court questioned whether the McBurneys were parties to the settlement agreement.

After several exchanges between the court and the defendant's counsel,[14] the court stated that, "here, as far as the McBurneys [go], it doesn't seem like . . . there's now, now anyway, a claim by [the defendant] that they're . . . bound by the settlement [agreement] because they agreed to it or some other legal argument that would affect them and say that they're bound by the settlement [agreement]. They're a party to the settlement [agreement]. That's not a claim now being pressed. Is that . . . a correct understanding?" The defendant's counsel did not respond directly to that question, instead indicating that the defendant had filed the motion for order "to try and keep [the settlement agreement] in place," that the defendant "want[ed] to go forward" with the settlement agreement, and that the defendant's "thought" was to pursue its claims against the McBurneys in a cross claim that it had filed against them approximately two months after the terms of the settlement agreement had been placed on the record.[15] The following colloquy then occurred:

"The Court: Let me just get one thing clear . . . . [I]t's now [the defendant's] position that it favors enforcement of the settlement agreement as filed by the other parties, that it is not seeking . . . to have any sort of order binding the McBurneys here, and that it wishes only that I deny the [McBurneys'] motion for sanctions. Is that a fair representation of [the defendant's] current position . . . ?

"[The Defendant's Counsel]: Yes."

After hearing argument from the plaintiffs' counsel, the court stated: "I want to make clear that in setting . . . this up, it seemed to me that what I was supposed to focus on is what happened in front of me. There was an agreement on the record in court, and if there was something for me to enforce it would be that. And that's why I took the position that . . . I have to determine whether there's some ambiguity or some other reason why I would go outside the terms that had been written down and were read on the record in court [on February 4, 2020] . . . . [I] wouldn't even get into testimony. It would not appear that . . . there's any reason for me to be concerned about that at all since [the defendant]

. . . has changed its position about whether [the settlement agreement is] enforceable under these circumstances . . . ." The defendant's counsel did not object to those statements.

Later, the court again asked the defendant's counsel to address whether the McBurneys had "consciously join[ed]" the settlement agreement. The defendant's counsel responded that, prior to February 4, 2020, the defendant did not believe that the McBurneys were in agreement with the proposed settlement. However, he further stated that (1) in light of a purported representation made by the McBurneys' counsel to Attorney Gerald L. Garlick, counsel for the defendant, before the terms of the settlement agreement had been placed on the record on February 4, 2020, (i.e., that the McBurneys would not "interfere" with the settlement agreement), and (2) upon hearing the plaintiffs' counsel state during the February 4, 2020 hearing, as paraphrased by the defendant's counsel, that he had "the consent of the McBurneys and . . . an agreement [by] all parties [as] to all terms," the defendant subsequently believed that the McBurneys were "joining in [the settlement] agreement . . . [and were] stamping their approval on it." In response, the court stated that "[what is] most concerning for me here is a suggestion that the McBurneys were affirmatively joining into th[e] settlement [agreement] rather than just saying, look, you can withdraw the action and we're out of it, and we'll do what we want later." The court further stated that the February 4, 2020 hearing transcript does not reflect that the plaintiffs' counsel had represented that "the McBurneys signed off on [the settlement agreement]. I know it doesn't say that."

The court then solicited comments from other counsel. The plaintiffs' counsel stated that "[t]he McBurneys absolutely did not sign on to the terms and conditions of the settlement [agreement]. They consented to my presenting the settlement [agreement] to the court and would not interfere and appear before the court to object to the entry of a settlement amongst the parties . . . who were signed onto th[e] [settlement] agreement . . . . That was the import of my—[the McBurneys] consent[ed] to our presenting the settlement [agreement], but they weren't going to appear and lodge an objection to the settlement [agreement] because they had absolutely nothing to do with [it]. . . . [T]he action was going to be withdrawn as to them." The McBurneys' counsel stated that "all the parties had a clear understanding . . . of the mechanics of the settlement [agreement] and that the McBurneys weren't part of that, that there was essentially a settlement around them by withdrawing claims." The town's counsel likewise concurred that the McBurneys were not parties to the settlement agreement.

In discussing the motions to summarily enforce the

settlement agreement, the court observed that none of the parties was opposing enforcement. The defendant's counsel stated that the defendant agreed that there was a settlement agreement and that it did not object to the motions to enforce it.

In the plaintiffs' original proposed order, the plaintiffs included a sentence providing that the McBurneys had "declined to participate in the settlement agreement . . . ." In its objection to the original proposed order, the defendant argued that the February 4, 2020 hearing transcript does not reflect that the McBurneys had " 'declined to participate in the settlement agreement.' "

Additionally, on July 13, 2020, the McBurneys objected to the original proposed order "to the extent it is construed in any way as a judgment of the court as to the McBurneys' rights in the subject matter thereof. Instead, the [original] proposed order should be understood as an order of the court limited to enforcement of the contractual rights between the parties to the settlement agreement (which does not include the McBurneys)." In an ensuing "response/objection" that the defendant filed on July 14, 2020, the defendant argued that the court should not adjudicate any settlement enforcement issues concerning the McBurneys, which would be "fully and fairly litigated in another forum."[16]

On July 14, 2020, in denying the McBurneys' request for sanctions against the defendant, the court stated in relevant part: "The court would not sanction [the defendant] for trying to get heard on its claim that, on various legal grounds, the [McBurneys] may not interfere with the settlement [agreement] that resolved this litigation. [The defendant] is accused, though, of misrepresenting to the court that the McBurneys agreed to be bound by th[e] settlement [agreement]. *The court knows from the proceedings in front of it and the parties' submissions that this is not true.* This is a motion for sanctions and not a matter of discerning the settlement terms, [s]o the court can look beyond the letter of the [settlement] agreement to the circumstances. [The defendant's] counsel has sworn that the McBurneys' lawyers said outside the courtroom [on February 4, 2020] that the McBurneys would not interfere with the settlement [agreement], and, indeed, the McBurneys' counsel was silent while in court [on February 4, 2020] and left court early. The McBurneys may contend with full justification that they did not give up by virtue of the settlement [agreement] any rights they had—*they are right that they were not part of the settlement [agreement]*—but that doesn't mean [the defendant] could only have asserted its beliefs in bad faith." (Emphasis added.)

The issue regarding the McBurneys' status with respect to the settlement agreement was addressed again during the August 4, 2020 hearing on the original

proposed order. During the hearing, the defendant's counsel iterated that no issues regarding the McBurneys should be addressed in the court's summary enforcement of the settlement agreement. The defendant's counsel further asserted that the issue of whether the McBurneys had assented to the settlement agreement had not been adjudicated, as the defendant had withdrawn the motion for order and the motion to bind without any discovery being permitted or an evidentiary hearing being conducted relating to that issue. The defendant's counsel maintained that the court "shouldn't take a position one way or the other as to whether the McBurneys ha[d] adopted the settlement [agreement], [were] part[ies] to it, or ha[d] agreed to do anything in connection with [it] [b]ecause we just haven't adjudicated the issue."

In response, the court stated that "what I believe happened was that [the plaintiffs' counsel] moved to enforce the settlement [agreement]. And I conducted a hearing about that, *and I concluded that the McBurneys were not part of the settlement* [*agreement*]. And that much is decided. . . . So, regardless of the motion that [the defendant] may have made . . . I was hearing the motion that [the plaintiffs' counsel] made to enforce th[e] settlement [agreement]. *And it was clear that the McBurneys were not part of it.* And that's going to be part of my order. But I'm not resolving the relationship between [the defendant] and [the] McBurney[s]. I'm just—*they were not . . . part*[*ies*] *to the settlement* [*agreement*]. That's what I concluded from the hearing. That's what I ordered [the plaintiffs' counsel] . . . to prepare a proposed order for." (Emphasis added.) The court permitted the defendant's counsel to comment, and the following colloquy occurred:

"[The Defendant's Counsel]: . . . [M]y final comment will be: We were not given an opportunity for discovery. We were not given an opportunity to present evidence at the [July 1, 2020] hearing. You had indicated that there would not be any evidence or testimony at that hearing. You cannot—

"The Court: Because I concluded I didn't need it.

"[The Defendant's Counsel]: Well, in my view, Judge—

"The Court: It was a question of law.

"[The Defendant's Counsel]: Yes, Judge. In all due respect, I think that testimony of people as to what they said, what authority they had, and what effect those words that were spoken to [the defendant]—both [to Attorney Garlick] and to [the defendant] on the record and before and the effect that it had on them in relation to the settlement [agreement] is relevant testimony. And, you know, again, I'm just going to—

"The Court: I find that we discussed this already at the—at the hearing that I held on it. And that I concluded

that discovery wasn't warranted. The question was simply: What was the agreement that was placed on the record before the court? And which didn't call for outside evidence. Because it was clear to me that my focus was on what was said on the record. And I'm not going to spend any more time debating it. Because I know what happened at the hearing. I know that I already considered that issue and indicated what I was doing. And this was solely about the fact that I imposed on [the plaintiffs' counsel] the obligation to give me a draft order that reflected what I had concluded on the record. So . . . this discussion is over with respect to that."

The next day, the plaintiffs filed the amended proposed order, which retained the language reflecting that the McBurneys had "declined to participate in the settlement agreement . . . ." In its objection to the amended proposed order, the defendant again argued that the February 4, 2020 hearing transcript does not reflect that the McBurneys had " 'declined to participate in the settlement agreement.' "

In the enforcement decision, the court noted that, on July 1, 2020, it conducted an *Audubon* hearing[17] and that, although the defendant had "requested discovery and a trial-type hearing on the terms [of the settlement agreement] . . . the court found no ambiguity in the recorded terms, thus rendering th[e] settlement [agreement] summarily enforceable with no need for discovery and testimony."

Additionally, the court stated: "The present action was scheduled for a trial of all issues on . . . February 4, 2020. At that time, counsel for the plaintiffs together with counsel for [the defendant] and [the town] appeared before the court and presented and stipulated to the terms and conditions of a settlement agreed to by those parties to the present action along with [Pine Orchard Association, Inc.] that disposed of any and all claims alleged by and between them in the above referenced matter . . . . The [self-represented] intervening plaintiffs . . . received notice of the scheduled hearing but declined to attend the hearing. The plaintiffs, however, represented to the court that the intervening plaintiffs had been advised of, and consented to, the terms and conditions of the settlement agreement presented to the court.

"[The McBurneys and Lowlicht and Haedicke] declined to participate in the settlement agreement, and it was represented to the court that any and all claims alleged against and/or by [them], if any, in the present action would be withdrawn upon implementation of the settlement agreement. The transcript [of the February 4, 2020 hearing] expressly reflects that while all parties agreed that this case was ending, the agreement was that it was ending for [the McBurneys and Lowlicht and Haedicke] 'without prejudice' to their claims or the claims against them."

In its motion to reargue, the defendant argued that the court resolved the issue of whether the McBurneys were parties to the settlement agreement without permitting discovery or conducting an evidentiary hearing notwithstanding that the issue was a disputed question of fact. In denying the motion to reargue, the court stated that "[t]he court's ruling was based on the unambiguous recitation of the terms of the [settlement] agreement in court made in the presence of and with the agreement of counsel for [the defendant]. One plain term of the agreement was that the settlement of this case was without prejudice to the McBurney claims. Therefore, no testimony was required."

In addition, on September 8, 2020, the McBurneys filed a motion for clarification, requesting that the court clarify that the enforcement decision concerned "merely the court's enforcement of a settlement agreement amongst certain parties not including the McBurneys, that the [enforcement decision] should not be construed as making any determination of any of [the] McBurneys' claimed rights, or the rights of any other nonparty, in the easement at issue in the settlement agreement, and that the [enforcement decision] should not be construed as enforceable against anyone other than parties to the settlement agreement . . . ." (Emphasis omitted.) On September 17, 2020, the court denied the motion for clarification, stating that "[t]he court has already made clear that the termination of this lawsuit was without prejudice to any claims by or against the McBurneys."

In claiming that the court committed error in making a finding that the McBurneys were not parties to the settlement agreement, the defendant asserts that (1) the issue of whether the McBurneys were parties to the settlement agreement was not before the court for consideration, (2) the record does not support the court's finding, and (3) the court improperly failed to conduct an evidentiary hearing. We address, and reject, each of these contentions in turn.

A

We first address the defendant's assertion that the court improperly addressed the question of whether the McBurneys were parties to the settlement agreement because that issue was not pending before it. The defendant contends that, following its withdrawals of the motion for order and the motion to bind, there was no motion before the court requiring a determination as to whether the McBurneys were parties to the settlement agreement. This claim fails.

"At the outset, we note that [p]leadings have their place in our system of jurisprudence. While they are not held to the strict and artificial standard that once prevailed, we still cling to the belief, even in these iconoclastic days, that no orderly administration of jus-

tice is possible without them. . . . It is fundamental in our law that the right of a [party] to recover is limited to the allegations in his [pleading]. . . . Facts found but not averred cannot be made the basis for a recovery. . . . Thus, it is clear that [t]he court is not permitted to decide issues outside of those raised in the pleadings. . . . It is equally clear, however, that the court must decide those issues raised in the pleadings.'' (Citations omitted; internal quotation marks omitted.) *Shapero* v. *Mercede*, 77 Conn. App. 497, 503–504, 823 A.2d 1263 (2003). This rationale extends equally to motions. See, e.g., *Chang* v. *Chang*, 197 Conn. App. 733, 750–53, 232 A.3d 1186 (2020); *Breiter* v. *Breiter*, 80 Conn. App. 332, 335–36, 835 A.2d 111 (2003). "[A]n interpretation of the pleadings in the underlying action . . . presents a question of law and is subject to de novo review on appeal.'' (Internal quotation marks omitted.) *Breiter* v. *Breiter*, supra, 335.

Here, notwithstanding the defendant's withdrawals of the motion for order and the motion to bind, the McBurneys' status as to the settlement agreement was squarely before the court vis--vis the motions to summarily enforce the settlement agreement, in which all of the movants sought summary enforcement of the settlement agreement *with respect to the parties to the settlement agreement*, which, as the movants claimed, did not include the McBurneys. Indeed, during the August 4, 2020 hearing, the court stated that the plaintiffs had "moved to enforce the settlement [agreement]. And I conducted a hearing about that and I concluded that the McBurneys were not part of the settlement [agreement]. . . . So regardless of the motion that [the defendant] may have made . . . I was hearing the motion that [the plaintiffs' counsel] made to enforce th[e] settlement [agreement]. . . . [The McBurneys] were not . . . part[ies] to the settlement [agreement]. That's what I concluded from the hearing.'' Accordingly, we conclude that, in determining that the McBurneys were not parties to the settlement agreement, the court addressed a question relevant to its adjudication of the motions to summarily enforce the settlement agreement.

B

We next turn to the defendant's assertion that the court's finding that the McBurneys were not parties to the settlement agreement is not supported by the record. We disagree.

"[T]o the extent that the defendant['s] claim implicates the court's factual findings, our review is limited to deciding whether such findings were clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been

committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling." (Internal quotation marks omitted.) *Commissioner of Transportation* v. *Lagosz*, supra, 189 Conn. App. 841.

On the basis of the record before the court, we conclude for the following reasons that the court's finding that the McBurneys were not parties to the settlement agreement is not clearly erroneous. First, during the January 31, 2020 hearing, the McBurneys' counsel unequivocally conveyed that the McBurneys were not in agreement with the terms of the settlement being negotiated, and no party disputed that representation. Second, during the February 4, 2020 hearing, with respective counsel for the plaintiffs, the defendant, the town, Pine Orchard Association, Inc., and the McBurneys present, the plaintiffs' counsel represented to the court that "the plaintiffs [had] reached an agreement with [the defendant] and [the defendant's principal member] on terms and conditions of settlement . . . ." The plaintiffs' counsel did not mention the McBurneys as being part of the settlement agreement. Third, during the February 4, 2020 hearing, the following colloquy occurred between the court and the defendant's counsel:

"[The Defendant's Counsel]: . . . [J]ust to make it clear, these two settlements that were reported are interdependent. This is a global settlement. If one falls through, the other one doesn't happen.

"The Court: You mean the town's and the plaintiffs'?

"[The Defendant's Counsel]: And the plaintiffs—

"The Court: Yeah.

"[The Defendant's Counsel]: —interior lot owners, [the defendant].

"The Court: Right.

"[The Defendant's Counsel]: It all has to happen or nothing happens."

The defendant's counsel did not identify the McBurneys as parties to the settlement agreement during that exchange. Fourth, the McBurneys' counsel was not present at the time that the settlement agreement was read into the record, and at no time prior to his departure from the courtroom did the McBurneys' counsel state on the record that the McBurneys had changed their position as conveyed to the court during the January 31, 2020 hearing. Fifth, the settlement agreement, which imposed no obligations on the McBurneys, provided that it was without prejudice to any claims by or against them.[18] Sixth, the defendant itself, in its motion for order filed approximately one month after the February 4, 2020 hearing, took the position that it had "not require[d] the McBurneys to approve the settlement [agreement]."

The defendant stresses that the February 4, 2020 hearing transcript does not support the finding that the McBurneys were not parties to the settlement agreement because it demonstrates that, after noting that respective counsel for Pine Orchard Association, Inc., and the McBurneys were not present in the courtroom, the plaintiffs' counsel represented that "we do have a—their consent. We have an agreement. We have . . . terms and conditions that all of the parties have agreed to in settlement of this claim." In light of the contents of the record described in the preceding paragraph, however, we agree with the court's statement during the July 1, 2020 hearing that the plaintiffs' counsel did not represent that "the McBurneys signed off on [the settlement agreement]." Considered in context, the statements by the plaintiffs' counsel reasonably can be construed to indicate that the McBurneys, although not joining the settlement agreement, were not objecting to the other parties' presenting the settlement agreement to the court.[19]

In sum, we conclude that the court did not err in finding that the McBurneys were not parties to the settlement agreement.

C

Last, we address the defendant's assertion that the court improperly resolved the question of whether the McBurneys were parties to the settlement agreement without conducting an evidentiary hearing. We are not persuaded.

"We consistently have held that, unless otherwise required by statute, a rule of practice or a rule of evidence, whether to conduct an evidentiary hearing generally is a matter that rests within the sound discretion of the trial court." (Internal quotation marks omitted.) *DeRose* v. *Jason Robert's, Inc.*, 191 Conn. App. 781, 797, 216 A.3d 699, cert. denied, 333 Conn. 934, 218 A.3d 593 (2019). "In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done. . . . Discretion means a legal discretion, to be exercised in conformity with the spirit of the law and in a manner to subserve and not to impede or defeat the ends of substantial justice. . . . It goes without saying that the term abuse of discretion does not imply a bad motive or wrong purpose but merely means that the ruling appears to have been made on untenable grounds." (Internal quotation marks omitted.) *St. Denis-Lima* v. *St. Denis*, 190 Conn. App. 296, 304, 212 A.3d 242, cert. denied, 333 Conn. 910, 215 A.3d 734 (2019). The defendant does not argue that the court violated any statute, rule of practice, or rule of evidence by not conducting an evidentiary hearing, and, therefore, we consider whether the court's inaction consti-

tuted an abuse of discretion.

Under the circumstances of this case, we conclude that the court did not abuse its discretion by not conducting an evidentiary hearing as to the issue of whether the McBurneys were parties to the settlement agreement. At no point prior to the July 1, 2020 hearing did the defendant request an opportunity to present evidence as to that specific issue, which, as we explained in part I A of this opinion, the plaintiffs, the town, and Pine Orchard Association, Inc., had placed before the court by way of their respective motions to summarily enforce the settlement agreement.[20] During the July 1, 2020 hearing, when asked directly by the court to confirm that the defendant was no longer seeking from the court an order binding the McBurneys to the settlement agreement, the defendant's counsel answered affirmatively. Furthermore, the defendant's counsel made no response to the court's statements that, on the basis of his representations, the court did not believe that it was necessary to hear evidence with respect to the motions to enforce the settlement agreement. Although the defendant's counsel made some comments suggesting that the defendant believed that the McBurneys were parties to the settlement agreement, those comments, at most, reflected that the defendant was not conceding that the McBurneys were not parties to the settlement agreement. We do not, however, construe those comments as overriding the affirmation made by the defendant's counsel that the defendant was no longer seeking to bind the McBurneys to the settlement agreement or to reflect that the defendant was pressing for an evidentiary hearing. Thus, at the end of the July 1, 2020 hearing, it could be reasonably concluded that there was no need to hold an evidentiary hearing as to whether the McBurneys were parties to the settlement agreement.

After the July 1, 2020 hearing, the defendant argued that it was not given an opportunity to present evidence on the issue of whether the McBurneys were parties to the settlement agreement. As the court observed during the August 4, 2020 hearing, however, that issue was addressed and resolved at the July 1, 2020 hearing. The defendant had opportunities, both prior to and at the July 1, 2020 hearing, to make a request to introduce evidence on that issue; however, the defendant did not pursue those opportunities. We cannot fault the court for not conducting an evidentiary hearing in this situation.

In sum, in light of the foregoing circumstances, we conclude that the court did not abuse its discretion by not conducting an evidentiary hearing as to the question of whether the McBurneys were parties to the settlement agreement.

II

The defendant next claims that, in summarily enforcing the settlement agreement, the trial court improperly altered or omitted material terms of the settlement agreement. For the reasons that follow, we agree with the defendant only insofar as the court omitted one material set of terms of the settlement agreement from the enforcement decision; we otherwise reject the defendant's remaining contentions.

The following additional facts and procedural history are relevant to our resolution of this claim. During the July 1, 2020 hearing, the court ordered the plaintiffs to file a proposed order with regard to the motions to summarily enforce the settlement agreement. Of import, the court conveyed to the plaintiffs that it wanted "to have a single document that's an order of the court that lays out all the elements [of the settlement agreement]."

Both the original proposed order and the amended proposed order, as described by the plaintiffs, contained "orders to enforce the settlement agreement that [were] in conformity with the terms and conditions of the settlement agreement except as to the timing of the implementation of the settlement [agreement] . . . ."[21] In its objections to the original proposed order and the amended proposed order, the defendant argued that the plaintiffs had altered or omitted material terms of the settlement agreement.

In the enforcement decision, the court entered orders to implement the terms of the settlement agreement, which we will further discuss in part II B of this opinion. Before setting forth those orders, the court "found that the draft order submitted by the plaintiffs conformed to the unambiguous terms of the settlement [agreement] as recorded, with one exception [addressed by the court]. Having addressed that legitimate concern, this order reflects what the parties plainly agreed to when recording the settlement [agreement] and provides detail when needed, not to in any way change the agreement, but as a matter solely of enforcing what was unambiguously agreed." In its motion to reargue, the defendant contended that the court's enforcement decision conflicted with the terms of the settlement agreement. In denying the motion to reargue, the court stated that "[t]he court's ruling was based on the unambiguous recitation of the terms of the [settlement] agreement in court made in the presence of and with the agreement of counsel for [the defendant]."

A

Before turning to the merits of the defendant's claim, we address the parties' dispute as to the applicable standard of review. The town and Pine Orchard Association, Inc., contend that the abuse of discretion standard applies. The plaintiffs argue in favor of a "deferential" standard of review. In contrast, the defendant asserts

that we should apply plenary review. We conclude that the proper standard of review is the abuse of discretion standard.

In *Vance* v. *Tassmer*, 128 Conn. App. 101, 16 A.3d 782 (2011), appeal dismissed, 307 Conn. 635, 59 A.3d 170 (2013), this court considered whether, in summarily enforcing a settlement agreement, a trial court had exceeded the scope of the agreement by conveying certain real property to the plaintiffs. Id., 108–109, 117. In reviewing that claim, this court explained that "[i]t is axiomatic that courts do not rewrite contracts for the parties. *Herbert S. Newman & Partners, P.C.* v. *CFC Construction Ltd. Partnership*, 236 Conn. 750, 760, 674 A.2d 1313 (1996). In determining whether the court went beyond the scope of the settlement agreement . . . we review the court's decision for an abuse of discretion. See *Waldman* v. *Beck*, 101 Conn. App. 669, 673, 922 A.2d 340 (2007). '[T]he court's authority in such a circumstance is limited to enforcing the undisputed terms of the settlement agreement that are clearly and unambiguously before it, and the court has no discretion to impose terms that conflict with the agreement. See *Janus Films, Inc.* v. *Miller*, 801 F.2d 578, 582 (2d Cir. 1986) ("[i]n determining the details of relief [pursuant to a settlement agreement], the judge may not award whatever relief would have been appropriate after an adjudication on the merits, but only those precise forms of relief that are either agreed to by the parties . . . or fairly implied by their agreement" . . .).' *Waldman* v. *Beck*, supra, 673–74." *Vance* v. *Tassmer*, supra, 117. Similarly, in *Waldman*, this court applied the abuse of discretion standard in addressing whether, in summarily enforcing a settlement agreement, a trial court had exceeded the scope of the agreement by rendering judgment against the defendant. See *Waldman* v. *Beck*, supra, 673–74. As *Vance* and *Waldman* demonstrate, the abuse of discretion standard applies when the question before this court is whether, in summarily enforcing a settlement agreement, a trial court has exceeded the bounds of the agreement.

The defendant acknowledges the aforementioned language but, nevertheless, contends that plenary review applies. The defendant relies on *Aquarion Water Co. of Connecticut* v. *Beck Law Products & Forms, LLC*, 98 Conn. App. 234, 907 A.2d 1274 (2006) (*Aquarion*), to support its proposition. This reliance is misplaced. In *Aquarion*, the defendants claimed on appeal that the trial court, in summarily enforcing a settlement agreement, "went beyond the scope of the settlement agreement"; id., 243; by (1) rendering judgment of possession in the plaintiffs' favor and (2) awarding the plaintiffs attorney's fees and costs pursuant to a provision of the agreement. Id., 242–43. With respect to the first claim, this court applied the abuse of discretion standard and concluded that the trial court acted within the scope of the settlement agreement by rendering judgment of

possession, agreeing with the plaintiffs' argument that the settlement agreement at issue was "the functional equivalent of a judgment of possession . . . ." (Internal quotation marks omitted.) Id., 242. With respect to the second claim, this court determined that the defendants' contention—that the provision in the settlement agreement providing for attorney's fees and costs in any *future* actions did not permit an award of attorney's fees and costs in the underlying action—raised a question of law. See id., 243. Accordingly, this court applied plenary review; see id.; and concluded that the attorney's fees and costs award was improper, as a matter of law, "on the basis of the settlement agreement." Id., 244.

This court's treatment of the first claim in *Aquarion* aligns with the principle set forth in *Vance* and *Waldman* that the question of whether a court has exceeded the scope of a settlement agreement when summarily enforcing it is subject to the abuse of discretion standard.[22] In contrast, at its core, the second claim in *Aquarion* did not concern the trial court's enforcement of the settlement agreement but, rather, the court's award of attorney's fees and costs pursuant to the agreement on the basis of its interpretation of the agreement. This distinction explains the two separate standards of review applied by this court to the two different claims raised in *Aquarion*.

In sum, pursuant to *Vance*, *Waldman*, and *Aquarion*, the abuse of discretion standard applies to the defendant's claim that the court committed error in enforcing the settlement agreement by altering or omitting material terms of the settlement agreement.

B

The defendant raises seven issues as part of its claim that, in the enforcement decision, the court improperly altered or omitted material terms of the settlement agreement. We address each issue in turn.

1

First, the defendant asserts that the court improperly expanded the southern boundary of a view easement[23] that would encumber a portion of the defendant's property pursuant to the settlement agreement. We disagree.

The settlement agreement provides that a portion of the lawn owned by the defendant "shall be subject to a viewscape easement, prohibiting the erection or placement of any permanent structure that is taller than 30 inches and/or any landscaping that is taller than 30 inches, nor any personal property that unreasonably impairs or blocks this viewscape easement. [Certain] gardens at the top of . . . riprap[24] in the view easement area can remain at their current height. *The eastern line of the view easement shall be a straight line from the* [avenue] *to the riprap along the westernmost edge of* [certain other] *gardens* [on the east side of the lawn]."

(Emphasis added; footnote added.) In the enforcement decision, the court ordered that the portion of the lawn at issue "shall be subject to a viewscape easement prohibiting the erection or placement of any permanent structure that is taller than thirty (30") inches and/or any landscaping that is taller than thirty (30") inches, nor any personal property that unreasonably impairs or blocks the view of [the sound] from the avenue (the 'viewscape easement'). The gardens at the top of the riprap in the viewscape easement area can remain at the height that existed during February of 2020. . . . *The eastern boundary line of the viewscape easement shall be a straight line that . . . shall extend from the southerly boundary line of the portion of the avenue to be conveyed to the town . . . to [the sound] and shall run along the westernmost edge of the existing gardens on the east side of the lawn. The viewscape easement shall be bounded to the south by [the sound].*"[25] (Emphasis added.)

The defendant asserts that, pursuant to the settlement agreement, the southern boundary of the view easement is coterminous with the edge of the riprap, meaning that neither the riprap nor the sound, which is located below the riprap, is subject to the view easement. We are not persuaded. The settlement agreement does not expressly define the southern boundary of the view easement, providing only that the eastern boundary of the easement extends from the southern boundary line of the avenue "to the riprap . . . ." Notably, in the preceding sentence, the settlement agreement refers to gardens located "at the top of the riprap . . . ." This belies the defendant's argument that the view easement extended only to the edge of the riprap, as the parties did not designate the "top" of the riprap as a boundary of the easement. Moreover, as the plaintiffs posit in their appellate brief, the plain purpose of the view easement is to permit a view of the sound. Under these circumstances, it is reasonable to determine that the settlement agreement fairly implied that the view easement extended to the sound. Accordingly, we conclude that the court did not abuse its discretion in designating the sound as the southern boundary of the view easement.

2

Second, the defendant argues that the court improperly omitted from the enforcement decision an order that the settlement agreement is "contingent" on the execution of quitclaim deeds and releases by the owners of interior lots along the avenue who had not previously entered into agreements with the defendant. We are not persuaded.

The settlement agreement provides that "[t]he parties shall exchange mutual general releases and shall withdraw all pending claims and actions by them. The documents to be executed will include, but not be limited

to, quitclaim deeds by all owners on the [avenue], who have not previously done so, and [Pine Orchard Association, Inc.], releasing any and all claims and rights to [the defendant's property and to [the] property [of the defendant's principal member] . . . . *Th[e] settlement [agreement] is subject to and contingent upon the execution of documents acceptable to the parties.*" (Emphasis added.) In the enforcement decision, the court ordered in relevant part that "[a]ll settlement documents shall be executed and exchanged by all parties, and the various property interests to be conveyed shall be completed and executed by September 4, 2020. In addition to general releases by and between the parties to the settlement agreement, the documents to be executed shall include, but not be limited to, quitclaim deeds by all owners of properties on [the] avenue who have not previously entered into an agreement with [the defendant] and, in addition, [Pine Orchard Association, Inc.], releasing any and all claims and rights to the properties . . . owned by [the defendant's principal member] and [the defendant] . . . ." The court did not explicitly order that the settlement agreement was "contingent" on the execution of any documents.

The defendant contends that the court committed error in failing to order that the settlement agreement was "contingent" on the execution of the documents at issue by the interior lot owners. The defendant maintains that portions of the settlement agreement will be unenforceable unless the interior lot owners execute the documents at issue, such that the inclusion of the word "contingent" is critical to signify that the settlement agreement is untenable without the participation of the interior lot owners. We disagree. The court ordered that "[a]ll settlement documents shall be executed and exchanged by all parties" and that "the documents to be executed shall include . . . quitclaim deeds by all owners of properties on [the] avenue who have not previously entered into an agreement with [the defendant] . . . ." We perceive no appreciable difference between the parties agreeing that the settlement agreement is "contingent" on the execution of the documents at issue by the interior lot owners and the court ordering that all settlement documents, which "shall include" the documents at issue, "shall be executed . . . ." Thus, we conclude that the court did not abuse its discretion by not ordering that the settlement agreement was "contingent" on the execution of the documents at issue.

3

Third, the defendant contends that the court improperly delineated where sitting and recreating is prohibited on a portion of the lawn that Pine Orchard Association, Inc., is to acquire from the defendant pursuant to the settlement agreement. This assertion is unavailing.

The settlement agreement provides that the defen-

dant "shall convey to Pine Orchard Association, [Inc.] . . . by quitclaim deed a strip of land that provides an 11 foot wide clear and unimpeded pedestrian access way from the end of the paved portion of [the avenue] to the stairway leading to [the sound] and then to [the sound], together with the stairs leading to [the sound]," along with the triangular piece of property containing the stairs. The parties refer to these segments collectively as "the path." The settlement agreement further provides that "the path shall be used for pedestrian access to the riprap, stairs, seawall, walkway, and the waterfront. *Except as provided below, no sitting or recreating shall be permitted on the path above the top of the stairs, nor shall any permanent structures be installed there. Sitting and recreating shall be permitted on the stairs, riprap, and/or seawall upon the path in the area from the top of the stairs to [the sound].*" (Emphasis added.) In the enforcement decision, the court ordered that "[t]he path shall be used for pedestrian access to the riprap, stairs, seawall, walkway and the waterfront . . . . *Sitting and recreating shall be permitted on the stairs, riprap and/or seawall upon the path in the area from the top step of the stairs to [the sound]. No sitting or recreating shall be permitted on the path to the north and landward of the top step of the stairs nor shall any permanent structures be installed there.*" (Emphasis added.)

The defendant contends that the court improperly described the portion of the path where sitting and recreating is barred as "north and landward of the top step of the stairs" rather than " 'above the top of the stairs.' " The defendant posits that the court's order creates confusion as to whether sitting and recreating is permitted on a grassy area located in the path next to the stairs. We are not convinced. We perceive no appreciable difference between the phrases "north and landward of the top step of the stairs" and "above the top of the stairs." Accordingly, we conclude that the court did not abuse its discretion in describing the area where sitting and recreating is prohibited on the path.

4

Fourth, the defendant asserts that the court improperly omitted from the enforcement decision an order that an easement over the defendant's property that the town is to acquire from the defendant pursuant to the settlement agreement enables the town to replace a drainpipe. We reject this assertion.

The settlement agreement provides that it "is contingent upon the acquisition by the [town] of the [avenue] and the granting of an easement over the lawn area *to maintain and repair the drain line.*" (Emphasis added.) The settlement agreement subsequently provides in relevant part that "[t]he town will receive from [the defendant] an easement *to maintain, repair, and replace a drainpipe* that runs from a catch basin in [a]

cul-de-sac [at the end of the avenue] straight south . . . to empty into [the sound]. . . . [T]he easement would include the right of the town to pass over and use additional portions of the [defendant's] property to the east, and outside that easement, only as necessary *to perform maintenance and repairs and replacement of that drainpipe.*" (Emphasis added.) In the enforcement decision, the court ordered that "[the defendant] shall grant to the town an easement and a license over the lawn *to maintain and repair a drain line* owned and operated by the town (the 'town easement'). . . . [T]he license shall grant the right to pass over and use additional portions of the lawn to the east, and outside the town easement, only as necessary *to perform maintenance and repairs and replacement of the drainpipe.*" (Emphasis added.)

The defendant contends that the court improperly failed to order that the easement permits the town not only to repair and to maintain the drainpipe, but to replace the drainpipe. We do not agree that the court's enforcement decision omits that provision of the settlement agreement. Although one portion of the court's enforcement decision refers only to the town repairing and maintaining the drainpipe with no mention of the town replacing the drainpipe,[26] the court clearly recognized the town's ability to replace the drainpipe in subsequently ordering that the town could pass over and use portions of the lawn outside of the easement "only as necessary to perform maintenance and repairs and *replacement* of the drainpipe." (Emphasis added.) Read in its entirety, the court's enforcement decision provides that the town may maintain, repair, *and* replace the drainpipe. Accordingly, we conclude that the court did not abuse its discretion.

5

Fifth, the defendant argues that the court improperly omitted from the enforcement decision an order that, in the event that the town must remove a fence, yet to be erected by the defendant, to access the drainpipe discussed in part II B 4 of this opinion, the town must (1) provide reasonable notice to the defendant and (2) cooperate with the defendant in scheduling repair work. We agree.

The settlement agreement provides that, "[i]n the event that the town requires removal of [the defendant's] fence to access the drainpipe, *the town shall provide reasonable notice, and shall cooperate with [the defendant's principal member] in scheduling the repair work. Emergency repairs are excepted from this requirement* [(notice and cooperation terms)]. In the event the town must remove the fence, it shall have the obligation to restore or replace it." (Emphasis added.) In the enforcement decision, the court ordered that "[t]he town will restore or replace [the defendant's] fence(s) if the town needs to remove the fence to access

the drainpipe." The court's enforcement decision did not contain the notice and cooperation terms.

The defendant contends that the court improperly failed to include in the enforcement decision the notice and cooperation terms, which the defendant represents that it insisted on inserting into the settlement agreement "[t]o limit the intrusion by the town for maintenance . . . ." We agree with the defendant. Although the notice and cooperation terms are set forth explicitly in the settlement agreement, the court did not include or refer to them in the enforcement decision, and we do not read them to be implicit therein. Of note, the plaintiffs' amended proposed order included language attempting to incorporate the notice and cooperation terms.[27] Thus, on the basis of the record before us, we perceive no apparent basis for the court's omission of the notice and cooperation terms from the enforcement decision.

Ordinarily, a court's omission of a settlement term in a decision summarily enforcing a settlement agreement is not problematic, particularly when the court is focused on enforcing a discrete portion of the agreement. That is, the terms of a settlement agreement remain in full force and effect notwithstanding a court's failure to mention them in an enforcement decision. Here, however, it is evident that the court intended to have the enforcement decision encompass all material terms of the settlement agreement. The court described the enforcement decision as "reflect[ing] what the parties plainly agreed to when recording the settlement [agreement] . . . ." In addition, in ordering the plaintiffs to file a proposed order with regard to the motions to summarily enforce the settlement agreement, the court stated that it wanted "to have a single document that's an order of the court that lays out all the elements [of the settlement agreement]." Under these circumstances, we conclude that the court erred in failing to include the notice and cooperation terms in the enforcement decision.[28]

6

Sixth, the defendant contends that the court improperly omitted from the enforcement order a "cooperation clause." This contention is unavailing.

The settlement agreement provides that "[the] settlement [agreement] is contingent upon the acquisition by the [town] of the [avenue] and the granting of an easement over the lawn area to maintain and repair the drain line. Th[e] settlement [agreement] is also subject to the approval of the Pine Orchard Association, [Inc.], Executive Board. *The parties shall cooperate and actively support the acquisition by the town and approval by [Pine Orchard Association, Inc.]*." (Emphasis added.) A subsequent portion of the settlement agreement provides that "[t]he parties will actively cooperate

in supporting the obtaining of . . . necessary approvals [by the town]." The court's enforcement decision does not utilize the term "cooperate."

The defendant posits that the settlement agreement requires the parties, in general, to cooperate with one another because the settlement agreement provides that " 'the parties shall cooperate . . . .' " The defendant ignores, however, that there is no sweeping "cooperation clause" in the settlement agreement; rather, the language that the defendant relies on concerns only the town's acquisition of the avenue and approvals needed by the town and Pine Orchard Association, Inc. Additionally, the enforcement decision provides that "[a]ny party who fails, neglects or refuses to comply with [the enforcement decision] shall be subject to the imposition of sanctions and such other orders as are deemed reasonable and necessary by this court to implement the terms and conditions of the settlement agreement and of this order." Ostensibly, any party to the settlement agreement who acts to undermine the settlement agreement is subject to sanctions or other necessary and reasonable enforcement orders.[29] Accordingly, we conclude that the court did not abuse its discretion by not including a "cooperation clause" in the enforcement decision.

7

Last, the defendant claims that the court improperly omitted from the enforcement decision an order that withdrawals and releases of the claims raised in *Wheeler* v. *Cosgrove*, Superior Court, judicial district of New Haven, Docket No. CV-17-6074630-S (*Cosgrove* matter)—in which an application was filed by the plaintiffs, among others, in 2017 seeking to lay out the avenue as a highway pursuant to General Statutes § 13a-63—were required. We disagree.

During the February 4, 2020 hearing, in setting forth the terms of the settlement agreement, the plaintiffs' counsel stated that "[t]he parties shall exchange mutual general releases and shall withdraw all pending claims and actions by them. The documents to be executed will include, but not be limited to, quitclaim deeds by all owners on the [avenue], who have not previously done so, and [Pine Orchard Association, Inc.], releasing any and all claims and rights to [the defendant's] property and to . . . property [of the defendant's principal member] . . . ." Shortly thereafter, the plaintiffs' counsel continued: "[T]he plaintiffs will report the settlement of this case in the [*Cosgrove* matter], which is pending . . . . We'll ask that [a] hearing [in the *Cosgrove* matter] be suspended pending the final approval of and documentation of th[e] settlement [agreement]. And I suppose that the withdrawals by the various parties . . . would similarly be filed upon the satisfaction of that—of . . . approvals by the town and Pine Orchard Association, [Inc.]." In the enforcement deci-

sion, the court ordered in relevant part that "[a]ll parties shall file withdrawals of any and all claims alleged by them, without costs, on or before September 11, 2020." The court entered no orders in relation to the *Cosgrove* matter.

The defendant contends that the court improperly failed to order that the claims in the *Cosgrove* matter be withdrawn and released in accordance with the settlement agreement. The settlement agreement, however, does not mandate withdrawals and releases of claims with respect to the *Cosgrove* matter. Although the plaintiffs' counsel stated during the February 4, 2020 hearing that the parties had agreed to withdraw "all pending claims *and actions* by them," when read in context of the settlement agreement in its entirety, we are not persuaded that the term "actions" includes the *Cosgrove* matter. (Emphasis added.) At most, the plaintiffs agreed to report the settlement of the present action to the court in the *Cosgrove* matter and seek suspension of a hearing then-scheduled in the *Cosgrove* matter pending the finalization of the settlement agreement, which presumably would affect the continued viability of the *Cosgrove* matter.[30] Accordingly, we conclude that the court did not abuse its discretion by not including in the enforcement decision an order requiring withdrawals and releases of the claims in the *Cosgrove* matter.

The judgment is reversed in part and the case is remanded with direction to incorporate into the trial court's August 11, 2020 enforcement decision the terms of the settlement agreement regarding the town of Branford's obligation, in the event that the town requires removal of the defendant's fence to access the drainpipe, to provide reasonable notice and to cooperate in scheduling repair work, except in situations involving emergency repairs; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] This dispute has spawned several appeals, including a prior appeal filed in the present case. See *Wheeler* v. *Beachcroft, LLC*, 320 Conn. 146, 129 A.3d 677 (2016); see also *McBurney* v. *Paquin*, 302 Conn. 359, 28 A.3d 272 (2011); *McBurney* v. *Cirillo*, 276 Conn. 782, 889 A.2d 759 (2006), overruled in part on other grounds by *Batte-Holmgren* v. *Commissioner of Public Health*, 281 Conn. 277, 914 A.2d 996 (2007); *Fisk* v. *Ley*, 76 Conn. 295, 56 A. 559 (1903). Additionally, there is an appeal pending in this court in a different matter relating to this dispute. See *Wheeler* v. *Cosgrove*, Connecticut Appellate Court, Docket No. AC 42547 (appeal filed January 31, 2019).

[2] The original plaintiffs who filed this matter are Celia W. Wheeler, Charles L. Dimmler III, Angela Rossetti, Dean Leone, Tina Mannarino, Lori P. Callahan, Harold D. Sessa, and Sheryl Lee Sessa. Additionally, the following parties intervened as plaintiffs: Peter Paquin, Suzanne Paquin, Frank Cirillo, Susan Cirillo, James Baldwin, Joann Baldwin, Antoinette Verderame, Leslie Carothers, and Ann Harrison. Before this appeal was filed, Callahan, Harold D. Sessa, Sheryl Lee Sessa, Harrison, and Carothers withdrew their respective claims. We refer in this opinion to (1) Wheeler, Dimmler, Rossetti, Leone, and Mannarino collectively as the plaintiffs, and (2) Peter Paquin, Suzanne Paquin, Frank Cirillo, Susan Cirillo, James Baldwin, Joann Baldwin, and Verderame collectively as the intervening plaintiffs.

Beachcroft, LLC, was the only defendant named in the plaintiffs' original complaint. Subsequently, the town of Branford (town) and Pine Orchard

Association, Inc., were cited in as defendants. Additionally, the following parties intervened as defendants: James R. McBurney, Erin E. McBurney, Roger A. Lowlicht, and Kay A. Haedicke. We refer in this opinion to (1) Beachcroft, LLC, as the defendant, (2) the town, Pine Orchard Association, Inc., Lowlicht, and Haedicke individually by name or by surname, and (3) James R. McBurney and Erin E. McBurney collectively as the McBurneys.

[3] On March 15, 2021, the McBurneys filed a motion to dismiss this appeal in part as moot, which this court denied on April 21, 2021. In their appellate brief, the McBurneys reasserted their mootness claim; however, the McBurneys' counsel withdrew this claim during oral argument before this court.

[4] Lowlicht and Haedicke are joint property owners and have at all relevant times been represented by the same counsel. Accordingly, we treat them as a unit.

[5] General Statutes § 47-31 (a) provides: "An action may be brought by any person claiming title to, or any interest in, real or personal property, or both, against any person who may claim to own the property, or any part of it, or to have any estate in it, either in fee, for years, for life or in reversion or remainder, or to have any interest in the property, or any lien or encumbrance on it, adverse to the plaintiff, or against any person in whom the land records disclose any interest, lien, claim or title conflicting with the plaintiff's claim, title or interest, for the purpose of determining such adverse estate, interest or claim, and to clear up all doubts and disputes and to quiet and settle the title to the property. Such action may be brought whether or not the plaintiff is entitled to the immediate or exclusive possession of the property."

[6] We note that, unlike the plaintiffs' operative complaint, the intervening plaintiffs' operative complaint did not expressly refer to the McBurneys or to Lowlicht and Haedicke.

[7] General Statutes § 47-31 (d) provides: "Each defendant shall, in his answer, state whether or not he claims any estate or interest in, or encumbrance on, the property, or any part of it, and, if so, the nature and extent of the estate, interest or encumbrance which he claims, and he shall set out the manner in which the estate, interest or encumbrance is claimed to be derived."

[8] In a memorandum of decision issued on November 4, 2013, disposing of one of the claims raised by the plaintiffs and the intervening plaintiffs, the trial court, *Bright*, *J*., found the following as to Pine Orchard Association, Inc.: "On June 13, 1903, [Pine Orchard Association, Inc.] was chartered by the state of Connecticut as an incorporated borough and municipal subdivision of the town . . . . It has taxing power and jurisdiction over land use and streets within its borders. . . . The purpose of [Pine Orchard Association, Inc.] 'is to provide for the improvement of the lands in said district and for the health, comfort, and convenience of persons living therein.' . . . All persons owning real property within the boundaries of the borough of Pine Orchard are members of [Pine Orchard Association, Inc.] by virtue of their residency. The area covered by [Pine Orchard Association, Inc.] includes both public and private roads. It is undisputed that [the avenue] is in Pine Orchard and subject to [Pine Orchard Association, Inc.'s] jurisdiction." (Citations omitted.)

[9] The court's decisions disposing of these claims are not at issue in this appeal. In the prior appeal filed in this matter, our Supreme Court affirmed the judgment of the court, *Bright*, *J*., denying, in part, motions for summary judgment predicated on res judicata filed by the defendant, the McBurneys, and Lowlicht and Haedicke. See *Wheeler* v. *Beachcroft, LLC*, supra, 320 Conn. 148–50, 154–55.

[10] Although there were two settlement agreements entered on the record, the parties generally identify them together as a single settlement agreement. Accordingly, we refer in this opinion to the two settlement agreements collectively as the settlement agreement.

[11] On March 4, 2020, Lowlicht and Haedicke filed a separate motion by which they "join[ed] in [the defendant's] request for an order that [the McBurneys] be precluded from contesting or interfering with the settlement agreement . . . ."

[12] None of the intervening plaintiffs, who were self-represented at the time, appeared at the January 31, 2020 hearing.

[13] The plaintiffs' counsel represented that he had received written confirmation from "all of the interior lot owners who ha[d] not previously entered into arrangements with [the defendant] and [the defendant's principal member]" that they consented to the terms and conditions of the settlement agreement.

[14] Between the January 31, 2020 hearing and June 12, 2020 (the date on which the defendant withdrew the motion for order and the motion to bind), the defendant was represented by Attorney Gerald L. Garlick of Seiger Gfeller Laurie LLP. On June 12, 2020, Attorney Richard P. Colbert of Day Pitney LLP appeared on behalf of the defendant as additional counsel. Both Attorney Colbert and Attorney Garlick attended the July 1, 2020 hearing; however, Attorney Colbert primarily spoke to the court on behalf of the defendant and exclusively addressed the court's questions regarding the McBurneys.

[15] On April 2, 2020, without requesting leave of the court, the defendant filed a cross claim against the McBurneys, seeking (1) to quiet title to its property or, alternatively, (2) damages for maintenance and repair costs in the event that the court determined that the McBurneys possessed an easement over its property. In its appellate briefs, the defendant represents that the cross claim has been withdrawn; however, the trial court file contains no such withdrawal.

[16] On November 16, 2020, the defendant commenced a separate action against the McBurneys and Pine Orchard Association, Inc., in which the defendant, inter alia, is seeking to quiet title to its property. See *Beachcroft, LLC* v. *McBurney*, Superior Court, judicial district of Hartford, Complex Litigation Docket, Docket No. X07-CV-20-6142650-S. That action remains pending.

[17] "A hearing pursuant to *Audubon* . . . is conducted to decide whether the terms of a settlement agreement are sufficiently clear and unambiguous so as to be enforceable as a matter of law." (Citation omitted; internal quotation marks omitted.) *Reiner* v. *Reiner*, supra, 190 Conn. App. 270 n.3.

[18] We note that the McBurneys did not file an answer, make a statement pursuant to § 47-31 (d), or raise any claim in the present action that would have to be withdrawn.

[19] We deem it notable that the defendant never filed a motion seeking summary enforcement of the settlement agreement predicated on an argument that the McBurneys were interfering with its implementation. Such a motion would have been appropriate if the McBurneys were, in fact, parties to the settlement agreement.

[20] In the enforcement decision, the court stated that the defendant had "requested discovery and a trial-type hearing on the terms [of the settlement agreement] . . . ." The discovery requests that the defendant served on the plaintiffs, the McBurneys, and Pine Orchard Association, Inc., in May, 2020, which the court prohibited without prejudice, sought, as the defendant described, documents "material and relevant to the issue of what interest the McBurneys are suddenly . . . claiming in [the defendant's] property." Those discovery requests did not seek materials concerning the McBurneys' status as either parties or nonparties to the settlement agreement. The record does not reflect a request by the defendant for discovery or an evidentiary hearing on that issue prior to July 1, 2020.

[21] On July 1, 2020, the court ordered the plaintiffs to file a separate proposed order setting forth a schedule to effectuate the terms of the settlement agreement. On July 9, 2020, in compliance with the court's order, the plaintiffs filed a proposed scheduling order, which the court approved on July 10, 2020. That order is not at issue in this appeal.

[22] In fact, this court in *Waldman* cited *Aquarion* in stating that the abuse of discretion standard applied in that case. See *Waldman* v. *Beck*, supra, 101 Conn. App. 673.

[23] We intend our use of the term "view easement" to be interchangeable with the parties' and the trial court's use of the term "viewscape easement."

[24] "Riprap consists of large stones or chunks of concrete that are layered on an embankment slope to prevent erosion. Merriam Webster's Collegiate Dictionary (10th Ed. 1998)." *Johnson* v. *North Branford*, 64 Conn. App. 643, 646 n.8, 781 A.2d 346, cert. denied, 258 Conn. 926, 783 A.2d 1028 (2001).

[25] The court also described the northern and western boundaries of the view easement, which we need not detail.

[26] Similarly, one section of the settlement agreement refers to the town's being granted an easement "to maintain and repair the drain line," with no allusion to replacement of the drainpipe.

[27] The amended proposed order provided in relevant part: "The town will restore or replace [the defendant's] fence(s) if the town needs to remove the fence while using the town easement or license for emergency repairs; otherwise, the town will give reasonable notice to [the defendant] of its need to repair the drain line and shall cooperate with [the defendant] in scheduling the repair work so that [the defendant] can remove (and there-

after replace) the fence(s) at [the defendant's] expense." We offer no opinion as to whether this language in the amended proposed order accurately encapsulates the notice and cooperation terms.

[28] As we explain elsewhere in part II B of this opinion, we reject the defendant's claims that the court omitted other material terms of the settlement agreement in the enforcement decision. Even if we were to assume that the enforcement decision omits other material terms of the settlement agreement, we iterate that the settlement agreement controls, such that the parties to the settlement agreement remain bound by any terms not addressed in the enforcement decision.

[29] Furthermore, we note that "[i]mplicit in every contract is the common-law duty of good faith and fair dealing. [I]t is axiomatic that the . . . duty of good faith and fair dealing is a covenant implied into a contract or a contractual relationship. . . . In other words, every contract carries an implied duty requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." (Internal quotation marks omitted.) *Vance* v. *Tassmer*, supra, 128 Conn. App. 111.

[30] On February 5, 2020, the plaintiffs, among others, filed a case flow request in the *Cosgrove* matter informing the trial court of the settlement agreement reached in the present case and that the settlement agreement would satisfy their claims in the *Cosgrove* matter. The plaintiffs requested that the court order that (1) all further proceedings in the *Cosgrove* matter be suspended and (2) the *Cosgrove* matter be withdrawn on or before May 19, 2020, or be subject to dismissal, with the understanding that the proceedings would resume if the settlement agreement failed for any reason. On February 6, 2020, the court, *Ozalis, J.*, ordered that certain scheduled proceedings in the *Cosgrove* matter were suspended and that the *Cosgrove* matter had to be withdrawn on or before May 19, 2020, unless the settlement agreement failed for any reason. The court subsequently extended the deadline to withdraw the *Cosgrove* matter several times, with the most recent deadline set as March 1, 2021. To date, the *Cosgrove* matter has not been withdrawn, and the case remains unresolved. Additionally, there is an appeal from the denial of a motion for summary judgment predicated on res judicata and collateral estoppel filed in the *Cosgrove* matter that is pending in this court. See *Wheeler* v. *Cosgrove*, Connecticut Appellate Court, Docket No. AC 42547 (appeal filed January 31, 2019).

———————————————